Johnson, J.
The question in this case arises upon the fifth clause of the testator’s will. By the fourth clause he had bequeathed to his sister, Polly Carter, the use and profits of $2,000, to be paid to her by his executor. The fifth clause was as follows: “ After the decease of my sister, Polly Carter, I give and bequeath said $2,000, hereinbefore devised to my said sister, Polly Carter, to the lawful heirs of my brother, Medad H. Frisbie, in equal proportions.” Medad H. Frisbie is notmamed or referred to in any other part of the will. It appears in proof that Medad H. Frisbie survived both the testator and his sister, Polly Carter, and that he has died since the decree of the surrogate; and also, that the respondents were, at the time of the death of the testator and of Medad Frisbie, the only children and heirs at law of the latter. The word “ heirs ” is a legal term having a definite meaning, and expresses the relation of person^, to a deceased ancestor and not to a living, according to the maxim, unemo est hceres viventisL Its primary import relates to the succession to real property. When it is used to denote succession or substitution, in connection with a legacy of personal *152 property, it may have the sense of denoting the persons on whom the law will cast the succession to that sort of property. As • in case of a legacy to B. and his heirs, or to B. or his heirs, the next of kin of B. at the testator’s death, in case B. were then dead, would be denoted. When, however, the word is not used to denote succession or substitution, but to point out and designate a legatee, as in case of a legacy to the heirs of B., to whom nothing is given in any event, then'there is no reason to depart from the natural, ordinary and legal sense of the word heirs. (2 Wins, on Exrs., 996, 997, and cases cited.) In such a case, to justify attaching to the word a different sense, the context must show that the testator used the word in a sense other than the primary and legal sense. Thus, if the bequest under consideration had read, “ to the lawful heirs now living, of my brother Medad,” it would have been obvious that the term was used to signify those who were then in the situation of heirs apparent to Medad, and not those who should afterward turn out to be Medad’s heirs upon his death. The courts have been astute to find grounds to sustain such secondary interpretations of the word “ heirs,” in order to carry out what was thus indicated to be the intent of the testator. It has been rested in various cases upon different grounds, varying with the modes of expression chosen by different testators. Thus, in Heard v. Horton (1 Denio, 168), the fact that the person to whose heirs the devise was made, was himself spoken of in the will as living, and was provided for in it, was held to show that when his heirs were spoken of, the intention must have been to designate individuals then existing, as those who were to take. This intention was allowed, to qualify the meaning which otherwise would have been borne by the word “heirs.” Several cases are cited and commented on in the opinion in that case, illustrating the grounds which had been laid hold of by the courts, to carry out the intent of the testator, to designate by the word “ heirs,” children or next of kin of the person whose heirs were spoken of. It is, however, not necessary to' restate those cases. In other *153 cases the grounds of decision are perhaps not so substantial. Thus, in Carne v. Dock (7 Bing., 226), the devise was to the heir at law of Mrs. Boche, of Butterliill. To the objection that there was nothing in the will to show that the testator knew Mrs. Boche to be living, Ch. J. Tindal replied, “ he describes her as of Butterliill,” and judgment was given for the heir apparen t, as the person designated by the will. So, in Vannorsdall v. Van Deventer (51 Barb., 137), where bequests were made to the heirs of various persons, all of whom were spoken of as deceased, except one, who was merely mentioned by name, the court held that the testator recognized him as living, by designating the others as deceased. In consequence, the word “ heirs ” was construed to mean his children, and to be used not in its strict and legal sense. Simms v. Garrott (1 D. & B. Eq., 393) illustrates the same principles with much clearness and force. All these cases, while they show how anxiously courts seek to carry out the intent which testators have disclosed in their wills, also show that courts require to find in the language used by the testator, grounds upon which to declare that he has used words in some special and secondary sense, and that, in the absence of any such grounds, they will not indulge in mere conjecture in construing his language. (Doe v. Perratt, 5 B. & C., 48.) The point is to collect from the language of the will, that it'was the intent of the testator to designate determinate persons by the word “ heirs,” as by providing, for instance, that the persons designated as heirs should take during the lifetime of the person whose heirs they are called. If this appears, then it is obvious that the word “heirs” is used in the secondary sense of “heirs apparent.” Where such legatees are to take immediately on the testator’s death, any thing in the will which shows that the testator contemplated the person whose heirs they are called, as being yet alive at that period, will show this; or a gift to or provision for him, or any other distinct recognition that his existence at the period when the will is to take effect, was in the contemplation of the testator. But where a future contingent interest is given by the will, as to heirs of a living per *154 son, after a life estate, there is no inconsistency in the recognition of the person named as ancestor being still in life; indeed, that is essential to the bequest creating such a contingent interest. In such a case, some other ground must be found, to afford an indication that the testator has not used the term “ heirs ” in its strict and primary sense, or the primary sense must be adhered to. For, although the vesting of legacies is favored, the law does not permit them to be vested, unless that appears to be the testator’s intent upon the words of the will.
In the case before us there.are absolutely no circumstances disclosed in the will, to raise a doubt in favor of the testator’s having used the word “heirs” in a special and limited sense, as a designation of the three living children of his brother Medad. Unless, therefore, the court is prepared to say that it will determine such a question upon mere conjecture, it must necessarily hold that the testator has employed'the language in question in its primary and legal sense. This we have shown that the court is not Avarranted in doing, by the course of adjudication. This conclusion is the niore impregnable, because the language employed is entirely and exactly adapted to create an interest known to the law. It may therefore on legal principles have effect in the exact form in which the testator has expressed himself, and this of itself is a conclusive reason why no other or secondary sense should be given to his words. .Under the Revised Statutes, limitations of future or contingent interests in personal property, are subject to the rules in relation to future estates in lands, prescribed in the same statutes. (1 R. S., 773, § 2.) A devise of land to A. for life, remainder to the lawful heirs of B., who is living, created at common law a contingent remainder, by which, if B. died in A.’s lifetime, the heirs of B. would take a vested interest on B.’s death, which would take effect in possession on A.’s death. On the other hand, if B. outlived A., the remainder could never take effect, because at the termination of the precedent estate it remained unascer tained in whom the estate should vest. (1 Greenl. Cruise, *155 707, pl., 19, 20.) The Revised Statutes have remedied this difficulty by providing (1 R. S., 725, § 34) that “ no remainder, valid in its creation, shall be defeated by the determination of the precedent estate, before the happening of the contingency on which the remainder is limited to take effect; but should such contingency afterward happen, the remainder shall take effect in the same manner, and to the same extent, as if the precedent estate had continued to the same period.” The notes of the revisers show that the section was intended to meet such a case as that now before us. (5 N. Y. Stat. at Large, 313.) When Polly Carter died, it was not ascertained who were the heirs of Medad Frisbie. That could only be known at his death, and he does not appear to have been dead when the surrogate’s decree was pronounced.
The surrogate’s decree was, therefore, wrong, in directing the $2,000 to be paid by the executor to the residuary legatee. It should have been decreed to be retained by the executor, until by the death of Medad Frisbie it should appear who were the heirs entitled to the money. The decision of the Supreme Court was also erroneous in decreeing the payment of the money to the children of Medad, as the parties entitled to receive it, before his death. It being suggested that Medad Frisbie is now dead, the decision of the Supreme Court, and of the surrogate, should be reversed, and the proceedings be remitted to the surrogate, to the end that the principal of the legacy, and any interest accrued since the death of Medad Frisbie, may be decreed to be paid to his heirs. The residuary legatee is obviously entitled to any interest received by the execufor, up to the time of Medad Frisbie’s death. JSTo costs are to be allowed in this court to either party.
All concur.
Judgment accordingly.