WILLIAM H. DORRANCE, AS ADMINISTRATOR, ETC., OF THOMAS DOWNES, SR., DECEASED, RESPONDENT, v. WILBUR M. HENDERSON, AS SHERIFF, ETC., APPELLANT.

*Sheriff — action against, for a false return — when he may show in mitigation of damages that the plaintiff's judgment has been set aside by a bankruptcy court — stay in bankruptcy, when void — effect of accepting a dividend.*

On the 9th day of August, 1876, the defendant, as sheriff, levied upon the stock of goods of the firm of Case & Downes by virtue of an execution issued upon two judgments recovered against that firm by the plaintiff's intestate on the 8th day of August, 1876. On the fifteenth day of August a petition to have the said firm declared bankrupts (but not alleging that the judgment or execution was in fraud of the bankrupt act or asking that a sale thereunder be restrained) was filed with the clerk of the United States District Court, who issued the usual order to show cause, and inserted therein a provision staying the sheriff from selling the said goods, who thereupon adjourned the sale until November sixteenth. On September nineteenth an order was made by the bankruptcy court denying a motion made by the plaintiff's intestate to set aside the stay and directing that the assignee in bankruptcy should sell the goods and that the liens of the judgments should attach to the proceeds realized therefrom. The defendant having on November fourth surrendered the goods to the assignee, after having been notified by the plaintiff's intestate not to do so, and having on December twenty-second returned the execution

unsatisfied, this action was commenced by the plaintiff's intestate on August 31, 1877, to recover the damages he had sustained thereby.

The defendant set up in a supplemental answer, and offered upon the trial to prove, that on September 28, 1877, the assignee in bankruptcy brought an action against the plaintiff's intestate in the District Court and procured therein a judgment setting aside the judgment upon which the execution was issued.

*Held*, that the stay was without authority and void and the defendant was not bound to respect it.

That the defendant should have been allowed to prove the recovery of the said judgment in the District Court, not as a bar to the action but in mitigation of damages. (BOARDMAN, J., dissenting.)

That as the plaintiff had lost the security of the levy by the sheriff's act it was entirely proper for him to prove his claim against the bankrupt's estate and accept a dividend thereon.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought against the sheriff to recover damages for a false return.

It appeared that on the 9th day of August, 1876, the defendant, as sheriff, levied upon and took possession of the stock of goods of Case & Downes, as copartners, of the value of $2,000, by virtue of two executions issued upon two judgments recovered by the plaintiff's intestate against the said firm, and duly advertised the same for sale thereunder.

That on the 15th day of August, 1876, a petition in the usual form was filed by other creditors of Case & Downes with the clerk of the District Court for the Northern District of New York, praying that the firm of Case & Downes might be declared bankrupts. In the petition there was no allegation that either of the said judgments or executions were in fraud of the bankrupt act or of creditors, or prayer that the defendant should be restrained from selling under the executions; that upon the petition being filed the usual order to show cause was issued by the clerk, who inserted therein a provision in form staying the defendant in this action as such sheriff from making sale under the executions, which order was served on the defendant on the 16th day of August, 1876.

The defendant deemed himself stayed by the said order and adjourned the sale from time to time until the 16th day of November, 1876. The plaintiff in the executions made a motion in the District Court, sitting in bankruptcy, to set aside the stay so far as

it restrained the defendant from selling under the executions, or for such other or further order in the premises as should be just and equitable. The motion was heard on the 19th day of September, 1876, and was opposed by the petitioning creditors. The court denied the motion and then proceeded to dispose of the property held by the sheriff by ordering the same to be transferred to the assignee in bankruptcy, and to be sold by him free and discharged of the liens of said executions, and that the said liens should be transferred and attach to the moneys realized from such sale, etc.

The plaintiff in the executions refused to recognize the validity of the order or to avail himself of any of its provisions and on the 11th of October, 1876, his attorneys notified the defendant that they considered the said order to be void and desired the defendant to proceed and sell the property on the executions, but the defendant did not do so.

On the 4th day of November, 1876, the assignee in bankruptcy of Case & Downes demanded the goods of the defendant and he surrendered the same to him without objection, and without any authority or assent of the said Thomas Downes, Sr., or his attorneys.

The assignee took the goods and sold them for $2,000 on the 6th day of November, 1876, and the said District Court confirmed the sale and ordered the goods sold free from liens. This order was made without any notice to the said Thomas Downes, Sr.

On the 22d day of December, 1876, the defendant returned the executions to the clerk's office of Madison county wholly unsatisfied, without direction or authority from the plaintiff or his attorneys. This action was commenced on the 31st day of August, 1877.

The defendant set up in a supplemental answer and offered to prove on the trial that on the 28th day of September, 1877, the said assignee in bankruptcy commenced an action in the said District Court against the said Thomas Downes, Sr., and procured a judgment therein setting aside the said two judgments. This defendant was not a party to that action.

On the 11th day of July, 1879, the said Thomas Downes, Sr., appeared before W. H. Comstock, register in bankruptcy, and claimed a dividend in the assets of said bankrupts on both of his aforesaid judgments or demands; and in his affidavits as to each, after stating their consideration, etc., he stated, in substance, that

executions were issued upon them and a levy made on the stock of goods of the bankrupts and that the sheriff afterwards released the levy; and the said Thomas Downes, Sr., afterwards received in all from the assets of the bankrupts as his dividend the sum of forty-one dollars and fifty cents.

*Wm. C. Ruger*, for the appellant.

*Edwin H. Risley*, for the respondent.

BOARDMAN, J.:

This was an action brought against the sheriff for a false return upon two executions issued to him. Judgments in favor of plaintiff's intestate. The facts are very clearly stated in the decision of the learned referee, to which reference is made.

The judgment rolls, the executions and the levy are conceded to have been regular in form, and that the defendant, by his levy, acquired a *prima facie* title to, or lien upon, the property seized. After such levy, bankruptcy proceedings were had against Case and Downes, defendants in the execution, by their creditors. Under those proceedings an order was granted staying the defendant. Such stay was unauthorized by the bankruptcy proceedings. No case was made by the petition in bankruptcy for such an order. No case was made by affidavit or proof to sustain such order. The court did not grant it, or direct it to be issued in any such form, nor did the judge pass upon the question. It was the act of the clerk, without power or authority and without right. It was an illegal interference with the proceedings of a State court, without a particle of evidence to excuse it. (*Clark* v. *Binninger*, 38 How., 341, and cases cited; *Hayes* v. *Dickinson*, 9 Hun, 277; *Roderigas* v. *E. R. S. I.*, 76 N. Y., 316.)

The stay was without authority and void, and the defendant was not bound to respect it.

If the preceding conclusion be correct, it must follow that the District Court could not acquire any additional or greater right to control the property, or the defendant, because the plaintiff saw fit to move in the District Court to set aside the void stay. That was not a submission to the jurisdiction of the court which could make the void act valid. The plaintiff failed of his relief, and, instead,

the court did something else which it had no right to do upon plaintiff's motion, and in direct hostility to his wishes. Certainly the plaintiff was not estopped by such unwarranted action of the court directing an officer of the State court to turn over plaintiff's vested rights and valid lien to an assignee in bankruptcy, there to be made a bone of contention, in such manner as the district judge might prescribe. The plaintiff very properly repudiated such interference and stood upon his rights under his levy. Those rights could not be attacked upon *ex parte* affidavit used in opposition to plaintiff's motion. Indeed, it is quite possible they could not be attacked by rule or order or on summary application, unless by the consent of the plaintiff in the execution. Much less could the plaintiff be compelled to become a party to litigation by rule, as in this case, without his consent. (*Smith* v. *Mason*, 14 Wall., 419; *Marshall* v. *Knox*, 16 id., 551; *Doyle* v. *Sharpe*, 74 N. Y., 154.) The proper remedy in case of contest over the title to or right of possession of property is by action by the assignee in bankruptcy against the sheriff or other person in possession. (U. S. R. S., § 4979.)

The referee finds, and there is sufficient evidence to sustain such finding, that the defendant, without authority or assent from the plaintiff, and voluntarily, surrendered the goods levied upon to the assignee in bankruptcy. Such act the referee finds to have been a wrongful act as to the plaintiff, by which plaintiff's lien was destroyed and by which defendant put an end to any privity between him and plaintiff, and the defendant thereafter acted in hostility to the plaintiff.

The voluntary surrender of the property and return of the executions unsatisfied, would make the defendant *prima facie* liable to the plaintiff for his debt. (*Ansonia Brass Co.* v. *Babbitt*, 74 N. Y., 395.) When such execution was returned, and when the property was given up by defendant, there was no fact, adjudication or valid order which justified the defendant's conduct. As matters then stood the sheriff was clearly liable to the plaintiff for his wrongful acts in releasing the property and returning the execution. He knew such acts were hostile to the interests and in violation of the directions of the plaintiff.

The plaintiff thereupon brought this action for a false return, and

judgment was recovered July 27, 1880, upon the report of the referee, dated May 6, 1880. After the commencement of this action an action was begun by the assignee in bankruptcy against Downes, Sr., and others, to set aside the judgments and executions in favor of Downes, Sr., and such judgments and executions were set aside as in fraud of the bankruptcy law. The defendant in this action was not a party to said action. That judgment was obtained in March, 1879.

This last judgment does not bar the plaintiff's action, as the referee finds. No such judgment existed when plaintiff's cause of action accrued, or when plaintiff's action was commenced. The sheriff was not a party to such action, nor was the sheriff at the time when he returned the executions unsatisfied, or afterwards, in privity with plaintiff. From that time he was acting in hostility to plaintiff and in accord with the assignee. He no longer stood in plaintiff's place or rested on his title. He abandoned and sacrificed plaintiff's rights to his adversaries. Nor were the subject-matter of the two actions the same. The action in the District Court was brought to get rid of the lien by virtue of defendant's levy under plaintiff's executions. But those liens had been destroyed by the defendant's wrongful acts long before the action was commenced. Here the question is, was the sheriff's act wrongful? The rights of the parties must be determined by the condition of things at the beginning of the action. (*Wisner* v. *Ocumpaugh*, 71 N. Y., 113.) The District Court judgment cannot be a bar to this action.

Nor can the sheriff use such a judgment as evidence that the levies were voidable because in violation of the bankrupt act. The sheriff cannot protect himself from his wrongful act by showing that the judgment or execution were erroneous or irregular. (*Bacon* v. *Cropsey*, 7 N. Y., 195 ; *Ginochio* v. *Orser*, 1 Abb., 433.) The judgments and executions were not void, but voidable at the election of the assignee in bankruptcy upon cause shown. The execution was regular upon its face and a protection to the defendant in making the levy and sale thereunder. He cannot be heard to say, by way of defense to his wrongful act, that there were reasons why plaintiff should not have had his judgments, or why such judgments should be set aside. Such defenses are available to the defendant in the judgment and execution only. It is not the

law that an officer can neglect his legal duty and then defend himself by evidence of extrinsic facts having no relation to his conduct, duty or liability.

After the plaintiff had lost the security of the levy by the sheriff's act it was entirely proper for him to prove his claim against the bankrupt's estate and take his dividend. By the defendant's act he had lost all his claim upon the debtor's property except in that way. It was not an adoption of the sheriff's act. It did not affect his right of action against the sheriff, nor was it a waiver of it. The referee has given the defendant the benefit of such dividend in reduction of the recovery. It is not necessary to say whether such allowance was proper or not since the plaintiff does not object to it.

The District Court judgment is not evidence in bar because the defendant is not a party to it, and because the judgment did not exist until long after the sheriff, defendant, had become liable for this debt of plaintiff's by reason of his wrongful act and false return. Nor is such judgment evidence against the plaintiff and in favor of the defendant that the execution under which defendant made his levy was voidable, invalid or irregular. The sheriff could not have proved by parol, by way of defense to his return of the executions unsatisfied, that plaintiff had procured such judgments under such a state of facts as would constitute a fraudulent preference under the bankrupt act. If that could not be done by parol it ought not to be done by a judgment record to which the defendant was not a party, and which would not have been evidence against him if the judgment had been in plaintiff's favor.

While some of the questions presented are not free from doubt I am of the opinion the judgment is right and should be affirmed, with costs.

LEARNED, P. J.:

I agree with the foregoing opinion of my Brother BOARDMAN except in this respect. While I think that there was a cause of action against the sheriff, and that the measure of damages was *prima facie* the amount of the execution; yet, on the other hand, I think that the sheriff could show the District Court judgment in connection with his own conduct, to reduce the damages.

Let us suppose that the sheriff had sold the goods of the judg-

ment debtor under the execution, and had paid to the plaintiff's intestate the money collected. Then, if the assignee in bankruptcy had brought his action against the judgment creditor, and had (as he did) set aside the judgment as in fraud of the bankruptcy he would have recovered from that judgment creditor the money which the sheriff had paid him. So that the plaintiff's intestate would practically have had nothing, by virtue of his judgment and execution. Now I do not see why he should be any better off, merely because the sheriff has violated his strict duty; doubtless in obedience to what he supposed to be a valid order of a competent court.

Again. If the sheriff had not thus surrendered the goods to the assignee in bankruptcy, but had continued to hold them, until the assignee commenced his suit against the plaintiff's intestate; then it is very evident that, in that suit, the District Court, having jurisdiction of this present plaintiff's intestate, could have (as it did) set aside his judgment and could thus have annulled the lien which he had acquired by his execution. Or it could have adjudged that the judgment creditor should transfer that lien to the assignee in bankruptcy. In either case the present plaintiff's intestate could have no claim against the sheriff for not proceeding with the execution. Why should his administrator have such claim now?

It must be remembered that the assignee in bankruptcy, on his appointment, became the owner of the property of this judgment debtor; subject to any valid liens thereon. If the judgment of the plaintiff's intestate was valid, as against the assignee, then the assignee took the property subject thereto. If it was not valid, then the assignee took the property free therefrom. Now, it is true that the sheriff was not authorized to decide whether the judgment was, or was not, valid. And if he attempted to decide this question he acted at his peril. But a competent court has now decided the question in a litigation between the assignee in bankruptcy and the plaintiff's intestate. And it is decided that the judgment was void as against the assignee. Certainly the sheriff had no better claim than the judgment creditor had. If the judgment was void as against the assignee in bankruptcy, so was the lien of the execution. And the sheriff, in surrendering the property to the person, as against whom the lien was void, has done the plaintiff or his intestate no damage.

We must look, not at technical rights of action, but at the real merits. And this is not a case in which any rule should be rigidly enforced against the sheriff. He made a mistake in surrendering the property; but it was a mistake which he might easily make. Bankruptcy courts have perhaps too often assumed powers which did not belong to them. And it is not strange that the sheriff yielded to a power wrongfully assumed by that court. He should not be punished, unless the plaintiff's intestate suffered actual damage, which he would not have suffered, had the sheriff retained the property. I do not see that the plaintiff's intestate would have been benefited by the retention of the property by the sheriff. He would have had to surrender it to the assignee in bankruptcy. And that is all that the sheriff did.

Therefore I think the judgment should be reversed and a new trial granted, costs to abide event.

LANDON, J.:

I concur with the presiding justice. The judgment recovered by the assignee in bankruptcy against Downes, Sr., is a fact material to show the value of the plaintiff's judgment, and to measure the exact loss which he sustained by the false return of the sheriff. That the sheriff was no party to that action is immaterial. The fact exists that the plaintiff's judgment was intrinsically valueless, and the supplemental answer allows proof of it to be given with the same effect as if the fact had been known and pleaded when the suit was commenced. The sheriff was only *prima facie* liable for the amount of the execution. (*Ansonia Brass Co.* v. *Babbitt*, 8 Hun, 157.) He can mitigate the damages. (*Swezey* v. *Lott*, 21 N. Y., 481–484.) Suppose the defendants in the execution had paid plaintiff the judgment since the commencement of this action, might not the sheriff prove it under a supplemental answer? Why is the defendant in this case credited with the amount the assignee in bankruptcy paid the plaintiff after suit commenced? Plainly because it was a fact showing that his damages had been reduced, and the sense of justice is offended by allowing a party to recover more than will compensate him.

Judgment reversed, new trial granted and referee discharged, costs to abide event.