Argued April 23, decided May 13, 1913.

# McCREA v. HINKSON.

(131 Pac. 1025.)

**Vendor and Purchaser—Option of Sale—Rescission—Contract—Mutual Mistake.**

1. Where complainant received from defendants an option for the sale of certain selections of unsurveyed public land, both parties believing that the descriptions when surveyed would contain 400 acres, and by reason of the fact that the land was subsequently included in fractional townships the descriptions contained only 224.41 acres, complainant was entitled to rescission because of a material deficiency in the quantity of land arising from a mutual mistake of the parties, though there was no fraud.

[As to options to purchase, see note in 118 Am. St. Rep. 597.]

**Vendor and Purchaser—Contract—Rescission—Mistake.**

2. Innocent and mutual mistake alone is sufficient to justify rescission of a contract for the sale of land when the mistake is so material that, if the truth had been known to the parties, the agreement would not have been made.

[As to rescission for negligent mistake of one party, see note in Ann. Cas. 1913A, 432.]

**Cancellation of Instruments—Mutual Mistake.**

3. The party against whom a contract for the sale of real property, made under mutual mistake of material facts, will not be specifically enforced, is generally entitled to rescind.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by J. E. McCrea against A. H. Hinkson and Jesse J. Nicolle to rescind an option contract. Defendants appeal from a judgment in favor of plaintiff.

The facts appearing from the record are as follows: On August 4, 1909, defendants executed to plaintiff a written contract, whereby, in consideration of the sum of $200 paid by J. E. McCrea, they agreed to sell him the selections covering the northwest quarter and the west half of the northeast quarter of section 5, and the

east half of northwest quarter and north half of northeast quarter of section 4, all in township 16 south, range 3 east.   J. E. McCrea agreed to pay the sum of $12,000 for the above selections and the lands covered thereby, the $200 to be applied on the purchase price if the balance of the purchase money was paid within 30 days from the date of the contract, or within such further time as the parties might mutually agree upon.   It was provided and understood that the $200 should be for an option for 30 days from the date of the contract, and that, in the event that no further payment was made, such sum should then be forfeited.   Hinkson and Nicolle agreed to execute assignments of such rights "to the said selections and the lands covered thereby" to J. E. McCrea.   On September 3, 1909, plaintiff made a further payment of $1,500, in consideration of which defendants extended the time 60 days.   Both plaintiff and defendants had examined the lands prior to the time they were surveyed.   The townships on the north and west thereof had been surveyed.   Settlers had surveyed township 16 south, range 3 east, and had marked lines corresponding to those on the north and west upon the assumption that the township would be of normal dimensions, so that each legal subdivision would be of substantially the usual size.   Guided by these surveys plaintiff's agent checked the survey made by the settlers, and estimated the timber on the land in question.   The United States survey was made between the 7th and 19th days of July, 1909.   This was not known to the parties at the time of the making of the contract.   The survey was not approved by the Surveyor-General until January 22, 1910, nor accepted by the Commissioner of the General Land Office until May 2, 1911.

Prior to August 4, 1909, the Northern Pacific Railway Company had filed in the United States Land

Office its selection list for the lands, which, when surveyed, would be described as the northwest quarter and the west half of the northeast quarter of section 5, in lieu of 240 acres of land theretofore relinquished, and in such selection list the area of the selected lands was stated to be 240 acres. Abraham Meister filed at the land office his application to select the lands which, when surveyed, would be described as the east half of the northwest quarter and north half of the northeast quarter of section 4, in lieu of 160 acres relinquished by him, in which application the area of the lands applied for was stated to be 160 acres, these being the selections referred to in the contract between the parties. It appears that they knew that the north line of the township was a line of correction, yet all the parties concerned contemplated that the lands, when surveyed, would be described as in the contract, and that the acreage would approximate that mentioned in the selection list, namely, 400 acres. When the surveys of township 16 south, range 3 east, were finally approved, they showed that the township was so small that, after laying off the southwest quarter and the southeast quarter of sections 4 and 5, there remained only 174.76 acres in the north half of section 4, and only 175.76 acres in the north half of section 5, which were divided into four lots in each section. On account of the shortage in the surveys, there were, as described in the contract, 175.61 acres, instead of approximately 400 acres, as contemplated by the parties. It also appears that prior to the Meister application Martin C. Broom, a qualified .homestead entryman, pursuant to the homestead laws, made settlement upon the land intended to be covered by the Meister application, and established his residence upon the land afterward designated as lot 3 of section 4, and by reason thereof the Meister application was canceled.

The plaintiff learned of such shortage in acreage subsequent to making the payments. Plaintiff notified defendants that he rescinded the agreement for the purchase of the lands, and on November 4, 1909, demanded the return of such payments. There is no allegation of fraud on the part of defendants. They tendered an assignment of their interest in the applications and the lands described in the option contract.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Sjur P. Ness* and *Messrs. Williams & Bean,* with an oral argument by *Mr. Louis E. Bean.*

For respondent there was a brief over the names of *Messrs. Veazie & Veazie* and *Messrs. Potter & Bryson,* with an oral argument by *Mr. J. C. Veazie.*

MR. JUSTICE BEAN delivered the opinion of the court.

The contention of the defendants is that at the time the option was given and the payments were made the land had been actually surveyed and the lines marked, and plaintiff by the exercise of reasonable diligence could have ascertained the area; that plaintiff and defendants were familiar with the method of securing surveyed and unsurveyed land with scrip, and were aware that sections 4 and 5 would either be in excess of 640 acres to each section, or that there would be a deficiency in the area; that plaintiff purchased at his hazard as to quantity. The contract of the Northern Pacific Railway Company provided that, in case of failure to obtain title to any portion of the land embraced in its contract, the sum of $10 per acre should be refunded, and that in the event of an excess in the acreage such amount per acre should be paid for the excess.

1. In the negotiations plaintiff first offered $22 per acre, and afterward $30 per acre, making in the aggregate $12,000 for 400 acres. It therefore appears that six of the 10 40-acre tracts, or legal subdivisions, which were the subject matter of the option contract and supposed to be in the north tier of the 40's, were found, except as to a small fraction thereof, not to exist. In so far as the contract is concerned, it does not affect these subdivisions any more than if they had been swallowed up by an earthquake. On account of the townships on two sides of the one in which the land described was expected to be, when surveyed, both parties seem to have anticipated that this one would be about the normal size, and that the land embraced in the option agreement would approximate 400 acres. There was a mutual mistake as to the area of land that could be obtained by virtue of the selections. Under the influence of the error common to both parties, the agreement was entered into. Its prejudicial consequences to the plaintiff are the same as if the defendants had designedly agreed to sell plaintiff 224.41 acres of land to which they had no right whatever. No laches can be imputed to plaintiff in the transaction. It was a gross mistake, as to the existence of the larger part of the subject matter of the contract, and entitles the plaintiff to a rescission: *Firebaugh* v. *Bentley, post,* p. 170, (130 Pac. 1129); *Babcock* v. *Day,* 104 Pa. 4, 8; *Newton* v. *Tolles,* 66 N. H. 136 (19 Atl. 1092, 9 L. R. A. 50, 49 Am. St. Rep. 593); *Kares* v. *Covell,* 180 Mass. 206 (62 N. E. 244, 91 Am. St. Rep. 271); 1 Story, Equity Juris. (13 ed.), § 142; 2 Warvelle, Vendors (2 ed.), § 906; *Floeting* v. *Horowitz,* 120 App. Div. 492 (104 N. Y. Supp. 1037); *Copeland* v. *Tweedle,* 61 Or. 303 (122 Pac. 302). The purchaser may rescind in case of a material deficiency in the quantity of land contracted for in the absence of acts on his part which

amount to an estoppel; and it is not material that there was no fraud on the part of the vendor. Where, however, the deficiency is not material, and is not such as to affect the enjoyment of the land contracted for, the purchaser cannot rescind on that account, at least where there is no fraud on the part of the vendor: 39 Cyc., pp. 1415, 1416.

2. Relief will be granted when a mistake is so material that, if the truth had been known to the parties, the agreement would not have been made. And if quantity entered into consideration in fixing the price, and the price was fixed upon an estimate of quantity that proves grossly incorrect, relief will be granted. It is not necessary that fraud be shown in order to obtain relief. Innocent and mutual mistakes alone are sufficient grounds for rescission and other relief: *Bigham* v. *Madison,* 103 Tenn. 358 (52 S. W. 1074, 47 L. R. A. 267, 269). The defendants could not maintain a suit for the specific performance of the contract because it would be inequitable: *Pickering* v. *Pickering,* 38 N. H. 400, 407, 408; *Eastman* v. *Plummer,* 46 N. H. 464, 479.

3. A party against whom a contract, made under a mutual mistake of material facts, will not be specifically enforced, is generally entitled to rescind: Pomeroy, Contracts, § 250. There may be exceptions to the rule, but this case does not fall within them. When the parties have agreed upon the sale by one and the purchase by the other of about 400 acres of land for $12,000, it would be inequitable and unconscionable to compel plaintiff to accept 175.61 acres at that price, especially under an executory contract (2 Warvelle, Vendors (2 ed.), § 905), where the price was arrived at by computing it at $30 per acre. There was really no contract to that effect: 39 Cyc. 1583; 1 Story, Equity Juris. (13 ed.), § 144; *O'Connell* v. *Duke,* 29 Tex. 299

(94 Am. Dec. 282); 2 Warvelle, Vendors (2 ed.), § 909; *Castleman* v. *Castleman*, 184 Mo. 432 (83 S. W. 757).

It is· unnecessary to consider what would have been the effect if there had been a small deficiency in the amount of the land, or the other question referred to in the case. It is clear that the land was what plaintiff desired to obtain, and what the defendants intended to sell a certain right to. It was not the mere scrip or applications made for land which did not exist, as described in the option contract.

The decree of the lower court should therefore be affirmed; and it is so ordered.        Affirmed.