# JEFFREYS *v.* WEEKLY.*

(158 Pac. 522.)

**Vendor and Purchaser—Misrepresentations of Quantity.**

1. The introduction of the words "about" or "estimated" or "more or less" in a conveyance or contract for a conveyance does not afford a shield against liability for false representations as to acreage, and the mere fact that a deficiency is very large in proportion to the supposed quantity is often treated as in itself evidence of fraud or mutual mistake.

**Vendor and Purchaser—Remedies of Purchaser—False Representations—Rescission.**

2. Where the representations of a seller of land are false, are of material facts, and are relied upon by the buyer, it is immaterial, in the latter's suit for a rescission, whether the representations were knowingly false.

[As to liability of vendor for false representations innocently made, see note in **Ann. Cas. 1913C, 63.**]

**Vendor and Purchaser—Remedies of Purchaser—Misrepresentation by Seller—Rescission.**

3. Where the seller of a ranch, who had lived thereon for 40 years, represented that it had about 60 acres of good bottom land, whereas in fact there were only about 40, while the bottom land was so placed that it was difficult to estimate its quantity on inspection, the buyer was entitled to rescind.

**Vendor and Purchaser—Remedies of Purchaser—Rescission—Retention of Possession.**

4. In a suit by a purchaser for rescission of contract of sale, the fact that the purchaser remained in possession of the property after tender to the vendor by way of rescission is matter merely addressed to the court in adjusting the rights of the parties in relation to rents, improvements, interest or the like, and such retention of possession does not necessarily defeat the claim of rescission.

From Coos: JOHN S. COKE, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This is a suit in equity by John S. Jeffreys against I. T. Weekly and Q. V. Weekly for the rescission of an executory contract for the purchase by plaintiff of

---

*As to right of purchaser to rely on vendor's representation as to quantity of land sold, see note in 37 **L. R. A.** 610.          REPORTER.

a ranch in Coos County, Oregon. The Circuit Court
found in favor of the defendants, and rendered a de-
cree accordingly. Plaintiff appeals. The purchase
price was $10,500. Plaintiff paid $3,500 at the time
of the execution of the contract on January 8, 1914, and
went into possession of the farm in February of that
year. The gist of the plaintiff's complaint is that at
the time of making the agreement, as an inducement
to the plaintiff to purchase the land, defendants made
the following representations to the effect: (1) That
the described premises contained 60 acres of bottom
land, 58 of which were improved and 2 of which were
covered by a hard maple growth; (2) that the water
system on the lands was supplied from a live spring,
and afforded sufficient water the year around for all
domestic purposes and for the watering of the live-
stock on the ranch; (3) that the defendants were sell-
ing to plaintiff a merchantable title to the premises,
except as to the lands theretofore conveyed to the
school district. These representations were alleged
by the plaintiff to be false. He averred that there
were not to exceed 34 acres of bottom land, nor more
than 32 of it improved; that he came to Coos County
only a few weeks before the making of the contract,
having resided for about 35 years in the eastern part
of Washington on an open, rolling prairie; that he was
unacquainted with the topography of lands similar to
those purchased, and therefore, upon viewing the land,
was unable accurately to estimate its acreage, or to
compute its area on account of his inability to read or
write; that he first became suspicious that the repre-
sentations of the acreage were false in the spring of
1914, when he obtained the assistance of a neighbor,
and roughly ascertained that there was a material
shortage; that in July, 1914, he employed a civil en-

gineer and caused the land to be surveyed; that the bottom lands are reasonably worth $125 an acre; that the water system does not afford sufficient water for either domestic purposes or for the watering of the livestock upon the premises, which he discovered during the summer season of 1914; that about May 11, 1907, the defendants had sold to O. C. Rice all the merchantable timber from the tract, except the maple wood of the bottom land, and had given the purchaser 15 years from the date of the deed to remove the same; that the first intimation he had of the Rice transfer was when a logger came there about May 1st to see about cutting the timber, and the first certain knowledge of it came to him through his attorneys, whom he consulted in July, 1914; that at the time of making the contract he relied upon the representations of the defendants; that the exception of the Rice deed was mentioned in the written agreement, but was not understood by him; that the ranch was worth several thousands of dollars less than it would have been if the representations had been true; that on August 19, 1914, soon after the discovery of the falsity of the representations, he rescinded the contract, delivered to the defendants notice of rescission, and tendered the property to them, which they refused. Defendants deny the making of any false representations, and aver that I. T. Weekly, defendant, told the plaintiff that the lands had never been surveyed, except a parcel of 7 acres; that he also told him that there were about 58 acres of bottom land, 2 acres of which were covered by a hard wood growth; that he did not guarantee, warrant nor misrepresent the number of acres of bottom land, and that the same was given only as a matter of opinion by him; that plaintiff examined the premises before making the contract, and had an

opportunity to estimate the area of the different kinds of land; that defendants never knew the exact amount of bottom land or plow land on the ranch; that plaintiff was informed that the water in the spring went low in dry seasons, and also of the sale of the timber to O. C. Rice. Defendants further averred that, after obtaining full knowledge of the condition of the land, plaintiff treated the property as his own, and was thereby estopped from claiming the relief prayed for in his complaint.

The reply puts in issue the new matter of the complaint, and alleges that after the discovery of the fraud plaintiff exercised dominion over the premises only for the purpose of preserving the same.

REVERSED.   DECREE RENDERED.

For appellant there was a brief over the name of *Messrs. Peck & Peck,* with an oral argument by *Mr. Cassius R. Peck.*

For respondents there was a brief over the names of *Mr. Lawrence Liljeqvist* and *Mr. A. J. Sherwood,* with an oral argument by *Mr. Liljeqvist.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears from the evidence that a short time before the making of the contract plaintiff was introduced to defendant I. T. Weekly, and among the first questions which he asked in making the negotiations for the purchase of the farm was how many acres of bottom land there were. The only dispute in regard to the answer given by Weekly is whether or not he said there were 60 acres, 2 of which were maple grove and 58 susceptible of plowing, or whether he said there were "about" that many. The estimate of the value

of the bottom land, which appears to be the most valuable part of the farm, varies from $125 to $250 an acre. The remainder, except about 2 or 3 acres of bench land upon which the buildings are situated, is estimated to be worth about $15 or $20 an acre. A fair valuation of the bottom land would seem to be $150 an acre. Plaintiff employed a Mr. Gettings, a civil engineer, to measure the bottom lands. According to his survey there were 37.38 acres thereof, 31.69 of which were in cultivation. Defendants engaged Mr. Gould, the county surveyor, to make a measurement, which showed 40 acres of bottom land, 36 acres of which could be cultivated and 32 that had been improved.

1. There is considerable evidence in the record as to the exact language that was used by Weekly. Plaintiff, who signs his name with a cross, was informed that he could rely upon the information given him by defendant Weekly, and it appears that he did so. As shown by the two surveys, there is but little difference in the area of the bottom land, which is accounted for principally by a variation as to what was considered bottom land in making the same. In his measurement the county surveyor included the land between high and low water mark on the river. Whatever language defendant employed, the record shows that he intended to induce the plaintiff to believe that there were about 60 acres of valuable bottom land, 58 of which could be cultivated. The introduction of the words "about" or "estimated" or "more or less" in a conveyance or a contract for a conveyance does not afford a shield against liability for false representations, and the mere fact that a deficiency is very large in proportion to the supposed quantity is often treated as in itself evidence of fraud or mutual

mistake: *Boddy* v. *Henry,* 126 Iowa, 31 (101 N. W. 447, 452); *Brawley* v. *United States,* 96 U. S. 172 (24 L. Ed. 622); *Belknap* v. *Sealey,* 14 N. Y. 155 (67 Am. Dec. 120); *Hosleton* v. *Dickinson,* 51 Iowa, 244 (1 N. W. 556); *Estes* v. *Odom,* 91 Ga. 600 (18 S. E. 356, 357); *Harrell* v. *Hill,* 19 Ark. 102 (68 Am. Dec. 208).

The main contention of the defendant, and, as we understand the record, the principal reason for the finding of the trial court, is that the defendant Weekly qualified his statement by saying that there were "about" 60 acres; and that this was not a false statement, but an expression of an opinion, and that plaintiff was given an opportunity to inspect the land for himself. It appears that the defendant had resided upon the land for about 40 years, and had cleared and cultivated the bottom land, in regard to which there is the principal controversy; that the plaintiff visited the premises before making the bargain, and examined the bottom land, which is in an irregular shape, a portion of it being situated upon both sides of Elk Creek which is winding and flows into the East Fork of the Coquille River, and another part located upon the river somewhat at a right angle to the land on the creek. It is very difficult to estimate its area. He made two other visits before the contract was signed, but did not examine the land. The plaintiff desired the ranch for raising stock and dairying, and the area of the bottom land, which is good and tillable, was a material consideration in the negotiations and in framing the contract. There was a shortage of more than one third. It is clear that the plaintiff did not obtain what he purchased or that for which he contracted. As soon as he discovered this he demanded of defendant Weekly that he adjust the matter. The latter answered that there was "Nothing doing." The de-

fendant seemed to consider that if he did not make any positive false statement, plaintiff, Jeffreys, was legitimate prey. Whatever phraseology was employed by Weekly, Jeffreys was overreached and deceived in the transaction. Weekly states that there was not much said about the timber being sold. In the contract the exception is stated thus: "Subject to the provisions of that certain deed made by the first parties hereto to O. C. Rice, recorded May 14, 1907," and naming the record. It is clear that Jeffreys did not understand fully at the time of making the contract that the timber, estimated at about 3,000,000 feet, had been sold from the land. The water supply, which was piped from a spring, was short during the season of 1914. While these facts are not of as much magnitude as the deficiency in the acreage of the bottom land, they at least lend color to the transaction. If a merchant should sell to Mr. Weekly a can of coffee supposed to contain 60 pounds, and there should be only 40 pounds, he would not consider it a fair deal. If, in settling a transaction, plaintiff had, by mistake, paid Weekly $60 when it was intended and agreed that $40 was due, the difference could unquestionably be recovered.

2, 3. If the representations of defendant were false, were of material facts, and relied upon by plaintiff, in this suit for a rescission, it is immaterial whether the representations were knowingly false or otherwise: *Vaughn* v. *Smith,* 34 Or. 56, 57 (55 Pac. 99); *Cawston* v. *Sturgis,* 29 Or. 331 (43 Pac. 656); *Bonelli* v. *Burton,* 61 Or. 435 (123 Pac. 37); *Joplin* v. *Nunnelly,* 67 Or. 574 (134 Pac. 1177); *McCrea* v. *Hinkson,* 65 Or. 137 (131 Pac. 1025); *Spence* v. *Hull,* 75 Or. 274 (146 Pac. 95). In 39 Cyc. 1267, it is stated:

"Fraud or misrepresentation as to the quantity of the land contracted for relates to a material fact and avoids the contract, unless the statement is a mere expression of opinion, or the circumstances are such that the purchaser has no right to rely on the statement. In such cases it is immaterial whether the sale was by the unit of area, such as the acre, or was in gross."

In *Van de Wiele* v. *Garbade,* 60 Or. 593 (120 Pac. 752), this court indicated that, if the assertion is of a present condition capable of being proved or disproved, it is a statement of fact and not of an opinion. In *Shute* v. *Johnson,* 25 Or. 61 (34 Pac. 966), this court said:

"But if the representations were intended to be the statement of a fact, to be understood and relied upon as such, relief will be granted."

In *Smith* v. *Anderson,* 74 Or. 94 (144 Pac. 1159), this language was used:

"However, it is not always easy to decide whether a given statement is one of opinion or of fact. To be considered in deciding the question is the subject matter, the respective knowledge of the parties, and the form of the statement."

In *Boelk* v. *Nolan,* 56 Or. 237 (107 Pac. 691), we find:

"A matter of opinion may amount to an affirmation of fact, when the parties are not dealing upon equal terms, and one of them has, or is presumed to have, means of information not equally open to the other."

In the present case the vendor had resided upon the land for about 40 years. He had cleared the bottom land and cultivated it, and would certainly be presumed to be familiar with its area; while the plaintiff, a stranger in that part of the state, had seen the land

during one day. In *Koehler* v. *Dennison,* 72 Or. 373 (143 Pac. 653), it is enunciated thus:

"The rule that no one is liable for an expression of an opinion is applicable only when the opinion stands by itself as a distinct thing."

In *Cawston* v. *Sturgis,* 29 Or. 331 (43 Pac. 656), the syllabus tersely shows the opinion upon this point as follows:

"Misrepresentations of material matters recklessly made as of one's own knowledge, without in fact knowing whether they are true or not, render the maker liable to one who relies and acts thereon to his injury."

In *Vaughn* v. *Smith,* 34 Or. 56, 57 (55 Pac. 99), it is said:

"The defendant's representations with regard to the condition of the title to the premises being false in fact, though made, as the court finds, 'unthoughtedly,' and being relied and acted upon by plaintiff, constituted such constructive fraud as will authorize a court of equity to treat the deed as an executory contract to convey and rescind the same."

*Spence* v. *Hull,* 75 Or. 274 (146 Pac. 95), was a case where this court found the facts much the same in substance as in the case at bar. But plaintiff in that case contracted to exchange a house and lot for certain crops and personal property. He was led to believe, as an inducement to make the contract, that there were 100 acres of crops. He visited the farm. The crops were in irregularly shaped fields, which could not be estimated accurately or measured easily. There were in fact less than 70 acres of crops. On this account plaintiff was held to be entitled to rescind the contract. *McCrea* v. *Hinkson,* 65 Or. 137 (131 Pac. 1025), supports the proposition that an innocent and mutual mistake alone is sufficient to justify rescission of a

contract for the sale of land when the mistake is shown to be material, when if the truth had been known to the parties the agreement would not have been made. In *Joplin* v. *Nunnelly,* 67 Or. 574 (134 Pac. 1177), it was announced by Mr. Justice RAMSEY that when a person makes a representation of fact to another which he knows not to be true, or when the circumstances are such that the law imputes to him knowledge of their untruthfulness, and the person to whom the representations were made believes them to be true and acts on them to his injury, the person making the representations is guilty of fraud. An action for the rescission of a contract, according to the "great weight of authority, can be maintained regardless of whether the false representation amounts to a fraud or is an innocent misrepresentation": 1 Elliott on Contracts, § 88, p. 151.

The contract in question in the case at bar is executory. It is not such an agreement as, under the circumstances, should be enforced by a court of equity. The difference between the real area and that supposed by the purchaser is so great that it would be unconscionable to uphold the contract; and the plaintiff was entitled to rescind.

4. It is contended by defendants that the plaintiff is not entitled to rescind for the reason that he remained in the possession of the premises and cultivated the same after he discovered the alleged fraud. In May or June, 1914, he complained to Weekly, and endeavored to have him correct the matter, and in August of that year he made a formal tender to Weekly of the property. He cared for and harvested the crops afterward. The correct rule in regard to such a state of affairs is stated in 1 Bigelow on Fraud, page 435, as follows:

"In suits by purchasers for rescission of contracts of sale the fact that the purchaser has remained in possession of the property after tender to the vendor by way of rescission, as well as before, is a matter merely addressed to the court in adjusting the rights of the parties in relation to rents, improvements, interest or the like."

Such retention of possession by the purchaser does not necessarily defeat the claim of rescission. The parties should be placed as nearly as possible in their former condition: *McGowan* v. *Willamette Valley Irr. L. Co.*, 79 Or. 454 (155 Pac. 705).

The plaintiff, after he had tendered to defendants a conveyance of the real estate and the personal property purchased, in the usual conduct of the ranch sold two cattle and three sheep for $111.45, which amount should be deducted from that to be refunded. The decree of the lower court should be reversed, and one entered rescinding the contract of January 8, 1914, and canceling all the obligations of plaintiff thereunder. Plaintiff is entitled to a judgment against the defendants for the sum of $3,500, less $111.45. The plaintiff has had the use of the farm for one season, and has made some improvements thereon. The rental should be offset against the interest upon the amount paid for about two years; and it is so ordered.

REVERSED.   DECREE RENDERED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE BENSON concur.