Argued January 11, affirmed January 22, 1918.

## JACKMAN v. NORTHWESTERN TRUST CO.[*]

(170 Pac. 304.)

**Vendor and Purchaser—Rescission—Mistake.**

1. If an innocent and mutual mistake was made by the defendant and plaintiff, the mistake being without negligence or fault on the part of plaintiff, and so material that if the truth had been known to the parties, the agreement for the sale of land would not have been entered into, that is sufficient to justify a rescission of the contract.

   [As to canceling or correcting writings because of mistake, see note in 117 Am. St. Rep. 227.]

**Fraud—Reckless Misrepresentations.**

2. Misrepresentations of material matters recklessly made, as of one's own knowledge, without in fact knowing whether they are

---

[*]On right of purchaser of land to rely upon representation of seller as to boundaries, see note in 14 L. R. A. (N. S.) 1210.        Reporter.

true or not, render the maker liable to one who relies and acts thereon to his injury.

**Vendor and Purchaser—Rescission—Mistake.**

3.   Where officer of vendor corporation went with plaintiff's agent and pointed out certain land as included in the tract to be sold, and such representation induced the sale, and was relied on, when such land was not included, the purchaser could rescind.

From Polk: HARRY H. BELT, Judge.

This is a suit by Edna R. Jackman against the Northwestern Trust Company, a corporation, to rescind a contract for the purchase of land. From a decree in favor of plaintiff, defendant appeals. Affirmed.

Department 2.   Statement by MR. JUSTICE BEAN.

This is a suit to rescind an executory contract for the sale of 163 acres of land in Polk County, Oregon, to recover the sums of money paid thereon and also the amount expended in making permanent improvements on the premises.   The trial court passed a decree rescinding the contract and awarding plaintiff the relief prayed for.   Defendant appeals.

The following statement of facts appears by the complaint: On November 16, 1911, defendant acquired title to certain property which it induced the plaintiff to purchase on March 1, 1915, for the sum of $3,000 by making false and mistaken representations concerning its boundary lines and the location of the buildings and a spring of water thereon. Plaintiff paid defendant $1,075 on the purchase price. On March 31, 1915, she and her husband and their children moved on the premises and remained there until about the first of August of that year.   She performed work and labor, furnished materials, and expended money for the improvement of the land of the reasonable value of $247.25.

In its answer defendant denies absolutely all the material allegations set forth in the complaint and alleges as a separate defense that on August 20, 1913, plaintiff and defendant entered into an executory contract for the purchase and sale of 15.11 acres of land in Loganville, Marion County, Oregon; that plaintiff paid upon said contract at divers times the sum of $525; that on September 29th of the same year defendant and plaintiff's husband, W. T. Jackman, entered into a further contract whereby the latter agreed to purchase of defendant an additional 14.42 acres of land in Loganville for the sum of $1,875 to be paid for by constructing a road across Loganville for defendant; that subsequently during the spring of 1915 plaintiff became dissatisfied with the properties and importuned the defendant to exchange the contracts for said properties, and equities created thereby, for the 163 acres in Polk County; that on March 14, 1915, at plaintiff's request and in consideration of the payment of the sum of $525 on account of the contract of purchase of the 15.11 acre tract, plaintiff and defendant entered into the agreement which plaintiff seeks to annul in this litigation without any representations being made by the defendant in regard to the physical location or aspect of the Polk County property, save as to acreage.

A reply was filed putting in issue the gist of the answer except as to the transfer.        AFFIRMED.

For appellant there was a brief over the names of *Mr. Everil M. Page* and *Messrs. McNary & McNary,* with an oral argument by *Mr. Page.*

For respondent there was a brief with oral arguments by *Mr. Oscar Hayter* and *Mr. E. K. Piasecki.*

MR. JUSTICE BEAN delivered the opinion of the court.

The evidence in the case supports the allegations of the complaint in the main; and stated in a general way shows that a short time before making the contract in question C. F. Reid, the president of the defendant, went with the plaintiff's husband, who acted in her behalf, to visit the land which is situated near Falls City; that neither was acquainted with the corners or lines thereof, but that Mr. Reid indicated that the buildings were located about in the center, according to which about 40 or more acres of practically level land which could be easily cleared and made good tillable soil would be embraced in the property; that there was a good spring thereon with a beautiful site for building purposes; that the deal was closed while upon the train and the application written; that after plaintiff moved upon the premises she cleared about 2½ acres and was informed by the road supervisor that a portion of that which she had cleared was not upon her premises, whereupon she had a survey of the lines run and ascertained that neither the spring nor the 40-acre tract which her husband examined with Mr. Reid were in her purchase. The land found within the lines of that purchased being rough, with a deep canyon, but little of it susceptible of cultivation and of small value, estimated at from four to six dollars an acre, she demanded a rescission of the contract and tendered the written contract to defendant.

1, 2. It is contended for defendant that its president had no knowledge of the boundaries of the land and that plaintiff's husband relied upon his own examination. It is clearly shown, however, that Mr. Reid led Mr. Jackman to believe that the buildings were near the

center of the premises and that the tract of about
40 acres which was somewhat level was a portion of
the land to be sold. It is plain that except for the
misrepresentations which were made, whether inten-
tional or otherwise, the contract would not have been
made. There was no meeting of the minds as to the
actual land embraced in the contract. If an inno-
cent and mutual mistake was made by the defendant
and plaintiff, the mistake being without negligence or
fault on the part of plaintiff and so material that if
the truth had been known to the parties, the agree-
ment would not have been entered into, that is suffi-
cient to justify a rescission of the contract for the
sale of the land: *McCrea* v. *Hinkson*, 65 Or. 132 (131
Pac. 1025); *Bigham* v. *Madison*, 103 Tenn. 358 (52
S. W. 1074, 47 L. R. A. 267, 269); *Duncan* v. *N. Y.
Life*, 138 N. Y. 88 (33 N. E. 730, 20 L. R. A. 386);
*Hosleton* v. *Dickinson*, 51 Iowa, 244 (1 N. W. 550).
The representations made to plaintiff were such as
would have deceived a person of ordinary prudence.
It appears that plaintiff could have reasonably be-
lieved the same to be true: *Dunning* v. *Cresson*, 6 Or.
241; *Wheelwright* v. *Vanderbilt*, 69 Or. 326 (138 Pac.
857). Misrepresentations of material matters reck-
lessly made, as of one's own knowledge, without in fact
knowing whether they are true or not, render the
maker liable to one who relies and acts thereon to his
injury: *Cawston* v. *Sturgis*, 29 Or. 331 (43 Pac. 656);
*Robertson* v. *Frey*, 72 Or. 599 (144 Pac. 128). If the
representations of defendant were false, were of ma-
terial facts and relied upon by the plaintiff, as the
evidence shows is the case, in this suit for a rescission
it is immaterial whether the representations were
knowingly false or occasioned by a mutual mistake.
They animated and controlled the conduct of the

party: *Joplin* v. *Nunnelly,* 67 Or. 566, 574 (134 Pac. 1177); *Spence* v. *Hull,* 75 Or. 267, 274 (146 Pac. 95); *Jeffreys* v. *Weekly,* 81 Or. 140 (158 Pac. 522); 39 Cyc., p. 1249.

3. It seems that while Mr. Reid did not know or pretend to know the exact locations of the lines and corners of the land, he did point out that which was not embraced in the contract upon which the spring was located, and induced a reliance thereon. He was under an obligation in so far as he indicated the location of the property to point it out correctly and he has no right to make a mistake in so doing and expect to escape liability therefor: *Bird* v. *Kleiner,* 41 Wis. 134; *Freeman* v. *Gloyd,* 43 Wash. 607 (86 Pac. 1051).

It is contended on defendant's behalf that only $525, the amount which had been paid upon the Loganville tract of Mrs. Jackman, was transferred and credited upon the contract in question. As to the other contract for Loganville property made by Mr. Jackman the defendant contends that it paid him $950 and was to pay him $50 more upon the completion of the road in full satisfaction therefor and that the contract was thereby canceled. This is disputed by Mr. Jackman and by the written contract in question and also by the statement or pass-book given by the defendant to plaintiff showing the payment of $1,075 marked ''trans.,'' which is explained to mean that this amount was transferred from the Loganville contracts. It is in evidence that Mr. Jackman assisted in the sale of the Loganville tracts and that defendant would not release him from the Loganville contract until such sale was made, making the deal in question a four-cornered one, when the purchaser transferred to defendant a Portland lot. It appears that there was a discount from the amount paid by the Jackmans on the Loganville

contracts in cash and road work of $350 or $400, but the evidence does not support the defendant's claim that there was a discount of $875, which would be the balance due upon the road work deducting the amount paid therefor, $950, and $50 for work not done. Mr. Reid states:

"I believe Mr. Jackman discounted—you see he had made the arrangements and received deposit on one— his property, I believe he discounted it approximately $500 in making the sale."

It therefore appears that the amount paid in labor on the W. T. Jackman contract for the Loganville tract did enter into the Falls City property contract in question. The trial judge heard and saw the witnesses upon the stand and his findings in regard to the facts should be given great weight. The decree of the lower court is affirmed.    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE MCCAMANT concur.