LUTHER P. DWINELL, APPELLANT, v. FRANK WATKINS ET AL., APPELLEES.

FILED MAY 5, 1910.   No. 16,027.

Mortgages: FORECLOSURE: MISREPRESENTATIONS: RELIEF. Where certain personal property was exchanged for real estate, and a note and mortgage upon the land was given to cover the excess in value of the real over the personal property, the note and mortgage will be canceled and set aside in the hands of the original payee, when it appears in an action to foreclose the mortgage that the property was of equal value at the time of the exchange, and that the mortgagors, who were ignorant of land values and had so informed the other party, had been deceived and misled as to the value and quality of the land by the owner of the land and by their agent, who, in fact, was also acting for the owner, but which fact was unknown to them.

APPEAL from the district court for Howard county: JAMES N. PAUL, JUDGE. *Affirmed.*

*T. T. Bell,* for appellant.

*Frank J. Taylor* and *Hall, Woods & Pound,* contra.

LETTON, J.

This action was brought to foreclose a mortgage given to secure a note for $3,500. Defendants admit the excution of the note and mortgage, but in a cross-petition which in substance alleges that the note and mortgage were fraudulently obtained, and there was no consideration for their execution and delivery, pray for their can-

celation, and that their title be quieted to the premises described.

The evidence shows that the defendants lived in Lincoln; that Bertha Watkins was engaged in keeping a rooming and boarding house, and that Frank Watkins, her husband, was engaged in the grocery business, and had formerly been a stage carpenter; that he had no knowledge of the value of the land in Howard county, and no experience as to the quality or productivity of soil; that Mrs. Watkins was desirous of disposing of the rooming house, and that about April 1, 1905, one Loman was employed by her as an agent or broker for the purpose of finding a purchaser for the property. Soon afterwards Loman, who was an old acquaintance and friend of the plaintiff Dwinell, informed Mrs. Watkins that Dwinell had 240 acres of land in Howard county which he desired to dispose of, and which he might exchange for the furniture. In company with Loman, Mr. Watkins went to Grand Island by rail, and from there was driven out to see the land, upon which the plaintiff with his family resided. They arrived at the farm about noon on Sunday, and, after taking dinner with the family, Watkins spent about an hour in looking over the land with Dwinell and Loman. This was about the middle of April, and no crops were then growing. They returned to Lincoln the same day. Watkins testifies that he made no inquiries of any one as to the value or quality of the land except Dwinell and Loman; that he told them he knew nothing about the quality or value of land himself, and that he should rely upon what they told him; that Dwinell told him the land was worth $6,500, said it was all good tillable land; that there were only 85 acres under cultivation, but it could all be cultivated; and that Loman also told him the land was worth $6,500. He testifies that on the way home he suggested to Loman that they stop in St. Paul and make some inquiries with regard to the land, but that Loman told him that he was well acquainted with the land, that it was worth the money, and

he would have no trouble at all. It appears that Loman had participated in making the sale to Dwinell some years before, and that he had the land for sale as Dwinell's agent before the time he was employed by Watkins; but both Mr. and Mrs. Watkins testify that they were not aware that Loman was acting as agent for Dwinell. Some of this testimony is contradicted by Dwinell and Loman; but Dwinell admits he said the land was worth $6,500, and that it could all be ploughed except 45 or 50 acres. Loman testifies that Watkins knew he was acting for both parties. Another witness says Loman told him, in speaking of this transaction, that Dwinell's price was $5,200, but they had inflated it to $6,500; and that he also said the land was so sandy it should be shown either when covered with snow or just after a rain, when the soil would appear dark. The preponderance of the evidence shows that the fair market value of the land at the time of the transaction was about $10 or $12 an acre, that it is mostly sandy and gravelly, and that only a small portion of it is susceptible of cultivation. The district court found specifically that, by reason of the fraudulent representations of the plaintiff and his agent Loman, the defendants were induced to purchase the premises for $6,500, and deliver the note and mortgage for $3,500; that the land was reasonably worth from $2,400 to $3,000 at the time, and that the furniture delivered to plaintiff was of the same or greater value than the land; that the defendants sustained damages to an amount equal to the amount of the note and mortgage; that they are entitled to have the same allowed as a counter-claim; and found further that there is nothing due from them upon the mortgage and note, and that they are entitled to have the mortgage canceled and discharged of record. A decree was entered accordingly.

The plaintiff concedes in his brief that the evidence would justify the court in finding the land was worth in cash from $10 to $12.50 an acre at the time of the trade, and that the furniture was worth $2,800 to $3,000, and

that the land was sandy and generally a poor grade of farm land. But he contends that no fraud has been shown; that when parties are negotiating for property which they are afforded an opportunity to examine, and which they do examine, each has the right to exalt the value of his property and depreciate. the value of the other's, and that such assertions of value do not amount to fraudulent representations. He also contends that both parties knew that Loman was the agent of both, hence there was no deception as to his relation to the parties. On the other hand, the defendants contend that the representations of Dwinell and Loman as to the condition, quality, and value of the land were statements of fact made to Watkins after he informed them that he knew nothing about the quality or value of the land, and that he would rely upon their representations; that Loman, while acting ostensibly as his agent, fraudulently dissuaded him from making inquiries, and that if he had known that Loman was acting for Dwinell he would not have relied upon his statements, and would have made other investigations.

The law is so well settled in this state upon every point involved that the only question here is one of fact. *Wiruth v. Lashmett,* 82 Neb. 375; *Olcott v. Bolton,* 50 Neb. 779; *Foley v. Holtry,* 43 Neb. 133; *Perry v. Rogers,* 62 Neb. 898. See, also, 20 Cyc. p. 54, subd. 3; p. 60, subd. 6.

We have considered the evidence, and have arrived at the same conclusion as to agency, concealment, and representations as did the trial court. The land and the furniture were about of the same value at the time they were exchanged, and the defendants should be relieved from the fraud to the extent of their obligation evidenced by the note and mortgage. The findings and decree are just, and are

AFFIRMED.