WILLIAM C. BRUCKER ET AL., APPELLEES, v. M. F. KAIRN ET AL., APPELLANTS.

FILED MAY 6, 1911.   No. 16,374.

1. Sales: FALSE REPRESENTATIONS: REMEDIES. If, to induce a party to purchase what is claimed to be an imported Percheron stallion, representations are made by the vendor of material facts which, if true, would greatly enhance the value of the animal, but which are false and known by the vendor to be false; or, if without knowledge of their falsity the statements are made by the vendor as representations of positive facts, they will, if believed to be true and relied and acted upon by the vendee in making the purchase, to his injury, support an action by the vendee for damages or for a rescission of the contract.

2. Fraud: FALSE REPRESENTATIONS. "A person is justified in relying on a representation made to him in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth." *Foley v. Holtry*, 43 Neb. 133.

3. Appeal: INSTRUCTIONS: REVIEW. This court will not search for error in the instructions. It is the duty of counsel who assails them to point out with reasonable particularity the error therein; failing so to do, it will be presumed that none exists.

APPEAL from the district court for Gage county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*L. W. Colby*, for appellants.

*Hazlett & Jack* and *S. D. Killen*, contra.

FAWCETT, J.

The petition alleges substantially: That on November 14, 1904, plaintiffs associated themselves together under the name of the Barneston Percheron Horse Company, for the purpose of purchasing and using an imported Percheron stallion named "Ulin"; that defendants, for the purpose of selling the horse referred to, represented to plaintiffs that they represented Robert Burgess & Son of Wenona, Illinois; that the stallion was the property of said Illinois firm; that it was a Percheron stallion and registered as such in France; that it was imported by the Illinois firm from France and again registered in the United States as a Percheron horse; that, in addition to said oral representations, they furnished plaintiffs a certain printed and written instrument, attached to the petition as exhibit A, in and by which defendants represented that the horse they were offering to sell to plaintiffs was a Percheron horse named "Ulin"; that on said day defendants delivered to plaintiffs a second printed and written instrument, exhibit B, in which the horse they were offering to sell plaintiffs was described as a Percheron stallion named "Ulin," and that said horse was the property of said Illinois firm; that defendants also executed and delivered to plaintiffs a bill of sale, exhibit C, "purporting to be executed by M. F. Kairn, agent for Robert Burgess & Son of Wenona, Illinois, and purporting to sell a certain stallion named 'Ulin' to these plaintiffs," a copy of which is attached to the petition; that, relying upon said oral and written representations, and believing the same were true, plaintiffs purchased from defendants the stallion referred to, "which they believed was a Percheron horse named 'Ulin,' and imported by Robert Burgess & Son, and registered in France as a Percheron horse, and that said horse was registered as a Percheron horse in the United States, and that said horse was the property of Robert Burgess & Son and imported by them; and, believing all the representations so made by said de-

fendants, did purchase said horse and pay the defendants the sum of three thousand ($3,000) dollars therefor;" that all of said representations so made by defendants were wholly false, and were made for the fraudulent purpose of inducing plaintiffs "to purchase a certain horse owned by them, and which horse, sold to these plaintiffs, was not a Percheron horse, was not registered in France as a Percheron. horse, was not imported by Robert Burgess & Son of Wenona, Illinois, was not registered in the United States as a Percheron horse, and was not and is not the horse represented by defendants to plaintiffs; that said horse was not of the value of $3,000, nor was it of the value to exceed $200. And, by reason of said false and fraudulent representations, plaintiffs were defrauded by said defendants out of the money so paid as above, and that they were damaged in the sum of $2,800 by reason of said fraudulent and false representations so made as above." A second cause of action was set out, but it was withdrawn from the jury during the trial, and no errors are predicated thereon by either party. The prayer is for $2,800 and interest.

Exhibit A recites: "Know all men by these presents: That Burgess & Son has this day sold to" plaintiffs (naming them), "the Percheron stallion, named Ulin." This paper is signed "M. F. Kairn."

Exhibit B reads: "Certificate of insurance. Robert Burgess & Son. Wenona, Illinois. The Only Importing Firm on Earth that Makes an Investment Safe by Replacing the Horse in Case of Death. It is mutually agreed by and between Robert Burgess & Son, of Wenona, Illinois, parties of the first part, and the purchasers of the stallion Percheron Ulin 11,548, parties of the second part," etc. This paper is also signed "M. F. Kairn."

Exhibit C, the bill of sale, reads as follows: "Know all men by these presents: That Burgess and Son of Wenona, Ill., by their agent, *M. F. Kairn* of the county of *Marshall*, state of Ill., party of the first part, for and in consideration of the sum of *three thousand & no-100*

dollars, lawful money of the United States, to *him* in hand paid, at or before the delivery of these presents by *Barneston Percheron Horse Co. of Barneston, Nebr.,* party of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey unto the said party of the second part, *their* executors, administrators, and assigns *Burgess and Son, stallion named Ulin, color gray, aged six (6) years,* belonging to *him,* and now in *his* possession, at the place last aforesaid. To have and to hold the same unto the said party of the second part, *his* executors, administrators, and assigns, forever. And *I* do, for *my* heirs, executors, and administrators, covenant and agree to and with the said party of the second part, *their* executors, administrators, and assigns, to warrant and defend the sale of said property, goods, and chattels hereby made, unto the said *party* of the second part, *their* executors, administrators, and assigns, against all and every person and persons whomsoever. In witness whereof, I have hereunto set my hand this fourteenth day of Nov. 1904. M. F. Kairn, as agent for Burgess & Son. Signed and delivered in the presence of —————.''

Service was not obtained upon defendant Kairn. Defendant Dixon appeared and answered for himself, first, that the petition does not state facts sufficient to constitute a cause of action; second, a general denial. There was a trial to the district court for Gage county and a jury, which resulted in a verdict and judgment for plaintiffs for $1,500. Defendant Dixon appeals.

The only assignments of error argued by defendant are (1) the insufficiency of the petition; (2) error in permitting certain evidence to be introduced over defendants' objection; and (3) error in the giving of instructions. These only will be considered, and in the order named.

1. The chief objection to the petition is the failure to allege that the representations made by defendant and relied upon by plaintiffs are not alleged to have been made

by defendants "with a full knowledge of the falsity of the same." While this may have been the rule in earlier days, we do not think it is now the rule anywhere. It certainly is not in this state. *Olcott v. Bolton,* 50 Neb. 779. Defendant further urges that "the purchaser could not blindly trust when he should know, and close his eyes where ordinary diligence required him to see." While that contention is true in some cases, it has no application when the representation is a positive statement of fact, where an investigation would be required to discover the truth. In such a case, a person is justified in relying upon the representations so made. *Foley v. Holtry,* 43 Neb. 133.

2. Questions 234, 235, 237, 238, 249, 251 and 252, and the answers thereto, were testimony given by Mr. Rawley, one of the plaintiffs as to statements made by Kairn to the witness and some of the other plaintiffs in his presence, when defendant Dixon was not present. This testimony was as to statements made to the witness and his coplaintiffs by Kairn, that the horse was an imported French Percheron horse, that Kairn said he was representing Robert Burgess & Son in the transaction, "and that they were a company of them out here selling horses." Mr. Rawley further testified that during the negotiations he met defendant Dixon; that a conversation occurred between the witness and Kairn and Dixon. "Q. State what it was. A. Why, Kairn and I went down to Oketo, and Dixon was there, and he made me acquainted with him as foreman of this bunch of men working for Burgess & Son. Q. Did you believe what Kairn said to you there in the presence of Dixon? A. Why, yes, I believed him." He was then asked if Mr. Dixon was where he could hear the statement made by Mr. Kairn, to which he answered, "Yes." "Q. What did he do upon Mr. Kairn saying those words, what did Mr. Dixon do? A. He shook hands with me. Q. Did Mr. Dixon deny the truth of that statement of Kairn's? A. No, he did not." He then testified: "We looked at another horse there, another stallion. Q. What, if anything, did Mr. Dixon say? A. Why, I asked them what their price was on that horse,

and I think it was $2,700, and I said, 'Why, he is a larger horse than you have in Barneston' (the horse Ulin), and Dixon said, 'Why, the horse we have in Barneston is an imported horse, and this is an American bred horse,' he said, 'That is the difference';" that he believed what Mr. Dixon said about the horse at Barneston—the horse Ulin—being imported.

The deposition of Kairn was taken by plaintiffs. He identified the pedigree which was furnished plaintiffs, which he gave to plaintiff Rawley in two parts—the French part and the American part. He testified that he received these documents from Dixon for the purpose of using them in connection with the sale of this horse. The testimony of two witnesses, introduced as experts on handwriting, is to the effect that the word "gray" in the American part of the pedigree is in the handwriting of defendant Dixon. Kairn also identified two letters received by him from Dixon and two written by him to Dixon. The expert witnesses on handwriting both testified that the handwriting in the letters from Dixon to Kairn is the same as the handwriting in the word "gray" above referred to. In the light of this direct connection of Dixon with Kairn, the court did not err in admitting the testimony above referred to. The testimony of the witness Brichat and of Kairn shows that the horse sold to plaintiffs was not an imported French Percheron, but was foaled in Washington county, Kansas, and was never owned by the importers, Burgess & Sons. Mr. Brichat testified that he had known the horse ever since he was foaled, and owned him part of the time.

It would serve no good purpose to refer further to the evidence in this case. It is amply sufficient to show that defendant Dixon was acting in concert with Kairn in the sale of this horse; that they perpetrated a fraud upon plaintiffs, and that Dixon received the greater portion of the "spoils." Having jointly participated in the fraud that was perpetrated upon plaintiffs, each is liable for the fraud and misrepresentations of the other in regard to the business then in hand. This proposition is so well established

and universally recognized that citation of authorities is unnecessary.

3. Defendant's entire discussion of this point is in the following language: "The instructions given to the jury are contrary to law and are erroneous." This is too general. It is no part of our duty to search the instructions, or any other part of the record, for error. That duty rests upon counsel who assigns error. If he believes that the court below has committed error, it is his duty to aid this court by pointing out such error with reasonable particularity.

No error having been called to our attention, the judgment of the district court is

AFFIRMED.