ELBERT J. LATTA, APPELLEE, v. BUTTON LAND COMPANY ET AL., APPELLANTS.

FILED JUNE 22, 1912.   No. 16,711.

1. **Vendor and Purchaser: FALSE REPRESENTATIONS: RESCISSION.** When, in order to induce a purchase of land, representations are made of material facts, and to ascertain their truth or falsity would require investigation, the party to whom they are made may place reliance upon them, and if deceived may be allowed to rescind the contract by a court of equity.

2. **Evidence examined and *held* to support a decree of rescission.**

APPEAL from the district court for Adams county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Flansburg & Williams,* for appellants.

*Charles A. Robbins* and *John C. Stevens, contra.*

LETTON, J.

This is an action to rescind a contract for the exchange

47

of certain real estate in Costilla county, Colorado, for real estate in Adams county, Nebraska, and certain notes and evidences of indebtedness. The defendant the Button Land Company is a corporation, Albert L. Button and Byron G. Button are officers of the corporation, and Elmer C. Hammond is a brother-in-law of the Buttons and an employee of the corporation. H. E. Gibson, from whom the title to the Colorado lands was conveyed to the plaintiffs, is a sister of Albert L. Button and Byron G. Button. The plaintiff Elbert J. Latta is a practicing physician, residing with his wife, M. Blanche Latta, at Kenesaw, Nebraska. The principal place of business of the Button Land Company is in Lincoln. At the time of this transaction it had local agents scattered over Nebraska, who drew the attention of prospective purchasers in their locality to the lands which the company had for sale, and who aided in gathering them into excursion parties at stated intervals. One of these agents was J. L. Templeton, a nephew by marriage of Dr. Latta, and in Dr. Latta's employ.

Dr. Latta, in the spring of 1908, desired to dispose of his Kenesaw property, and was induced by Templeton to go with him to the San Luis Valley, in Colorado, on a land selling excursion conducted by the Buttons. The party of about 25 or 30 persons occupied a sleeping car chartered by the land company. They reached Denver the next day, and spent the day in that city. The next morning they arrived at Alamosa, and went by train from there to Monte Vista, where they were met with carriages which the Buttons had in waiting. They were then driven some 30 or 40 miles over the country north and east of Monte Vista, stopping at the town of Center for lunch. This part of the valley is thickly settled and is in a high state of cultivation. The party returned to Monte Vista, where they took a train to Alamosa, and remained at a hotel there over night. The Button Land Company maintained an office in this hotel, in which was a display of agricultural products raised in the vicinity

of Mosca, a little town north of Alamosa, near which lay the land which the land company was selling. In the morning A. L. Button called the party into the office and gave each one a slip of paper with each piece of land to be shown numbered consecutively, so that when a place was reached the number would be mentioned and the land seeker could make such notes as he desired. Automobiles were provided and they were taken to see the listed lands. Their route took them to a point north and east of Mosca, thence westward to a point northwest of the town, and they returned to Alamosa without going into Mosca, though they could see a mill and elevators there. After arriving at Alamosa a written contract was made for the purchase of 320 acres of land, to be paid for by the conveyance of plaintiff's Kenesaw property and the transfer of certain specified promissory notes, which is the contract now sought to be rescinded on account of statements and representations which, it is claimed, were fraudulently made by Hammond and Button in order to induce the plaintiff to buy the lands, and upon which he relied in entering into the agreement. It is alleged, in substance, that these representations were that the actual selling price of the lands shown near Monte Vista, which were irrigated and under cultivation, was at that time $100 an acre and upwards, and that a piece which was pointed out had actually changed hands at $250 an acre; that it was further represented that the land near Mosca was of the same kind and character and fully as valuable for farming purposes as the land near Monte Vista, and was reasonably worth more than $35 an acre; that the defendants had no interest in the land, except a commission for procuring a purchaser; that the Buttons themselves owned a large amount of land in Costilla county, and were holding the land for a price of $100 an acre; that the lands were not settled and cultivated, because the same had been involved in litigation for a number of years, and for no other reason; and that a sufficient water right was attached to and appurtenant to

the land, and would pass to the party on deed of convey ance, and that plenty of water for irrigation would be furnished under said water right.

The plaintiff alleges that all of these allegations and representations were false and untrue. He further alleges that the legal title to the lands appeared to be in one H. E. Gibson, but that it really belonged to the Buttons, and that they received not less than $25 an acre profit on the sale; that the title was taken in the name of Gibson to deceive and defraud purchasers; that plaintiff stated to the Buttons that he relied upon their judgment and experience and knowledge in selecting the land, and not upon his personal knowledge or opinion or examination, and that it was represented to him by them that he could rely upon their knowledge and on their fairness, honesty and advice in purchasing the land. The answer contains objections to jurisdiction, a general denial, and a plea of ratification, and estoppel. The court found for plaintiff, and defendants appeal.

In August, 1908, the maker of one of the notes transferred deposited the money to pay it in a bank at Kenesaw to await the delivery of the note. Dr. Latta, having become dissatisfied, directed the bank to retain the money and not to pay it over to the land company. On September 28, 1908, about 10 or 12 days before the filing of the petition in this case, Byron G. Button went to Kenesaw to see about this collection. Plaintiff told him that he paid too much for the land, that it was not as represented, and that defendants had agreed to give him water, but had failed to do so. Button then delivered to him two shares of stock in the Farmers Union Ditch Company, and plaintiff authorized the bank to pay the money on the note. At that time Dr. Latta also asked Button to sell the land for him, and listed it for sale with the land company as his agent at the price of $40 an acre. A number of the notes which had been transferred to the defendants were sent to the Exchange Bank of Kenesaw for collection. October 10, 1908, this action was begun

to rescind the contract, to enjoin the bank from transferring, returning or in any manner disposing of the notes in its hands, and to quiet the title to the Kenesaw real estate in the plaintiff.

1. The jurisdiction of the district court for Adams county is assailed on the ground that the Kenesaw bank is not a necessary party to the suit. As to this point, we think it clear that that court had jurisdiction. The action was not only for the rescission of the contract, but to impound the negotiable securities which were in the hands of the Kenesaw bank for collection, and to prevent them reaching the hands of innocent purchasers, and to quiet the title to the Kenesaw real estate. These objects were properly embraced within the scope of the action and were necessary in order to give complete and adequate relief. The bank was a proper and necessary party, and the summons was properly served in Lancaster county against the other defendants. The cases cited by the defendants are not applicable under these conditions.

2. Defendants next complain that the evidence is insufficient to sustain the decree. It is impossible within the limits of this opinion to set forth the testimony in the record, much of which is irrelevant. We are not inclined to place much stress upon the claim that there was a fiduciary relation existing between the parties by reason of the conversation had between Dr. Latta and A. L. Button on the train. Nor do we place much weight upon the contention that the plaintiff, or the other members of the party, was prevented by undue means from making independent investigations as to the quality and value of the lands. This must be qualified, however, by saying that the short time which the party spent in the valley and the manner in which they were kept upon the move might of itself suggest to a prudent and cautious person that perhaps there was some ulterior object in making such a hurried trip. There are other facts which in our opinion justify the conclusion of the district court. It appears that farming operations upon the lands in the

neighborhood of Mosca had been for the most part aban-
doned after having been carried on successfully for about
10 years. The reason for this being that water from
irrigated lands at a higher level percolated through the
soil and raised the level of the water table in that vicinity
from a depth of 15 feet to a depth of only 4 or 5 feet. In
its passage through the soil the water became saturated
with alkaline matter, and by capillary attraction the
water holding this matter in solution was drawn to the
surface of the ground and there evaporated, leaving a
white alkaline substance on the surface. It is shown
that this condition may perhaps be remedied by tile
drainage, but that this is really largely a matter of ex-
periment, and would cost about $7 an acre. When the
party reached the valley, they were first shown beautiful
fields and farms near Monte Vista, where the subsoil was
of a sandy or gravelly nature. It was represented to
them that this land was worth from $100 to $250 an
acre. The land in this vicinity is somewhat stony, but
plaintiff was told that the land which he would be shown
next day was of a better quality, and not so rough and
stony. As a matter of fact, the Monte Vista land was
being held at from $40 to $75 an acre at this time. After
the party left the hotel the next morning, and on the way
to the Mosca land, plaintiff noticed that the farms had
been abandoned, and, upon inquiry, was told that the
right to water for irrigation had been in litigation be-
tween the United States and Texas or Mexico, that the
litigation had lasted for 10 or 12 years, and had just ter-
minated favorably for the settlers, and that, on account
of the uncertainty of procuring water and the trouble of
getting it, the settlers had moved away. The evidence
shows that, while there had been some litigation, it was
not as represented, but was of the nature of the settle-
ment of priorities; that the right of the Farmers Union
Ditch Company to the water was not seriously in dis-
pute, and that the litigation had never operated to pre-
vent farming operations in this vicinity. The difference

in the testimony of the Buttons and that of the Lattas with respect to the conversation in these respects is very slight. On the one hand, the plaintiff's witnesses say that the representations were made direct to them as matters of fact in order to induce them to purchase, while the defendants' witnesses testify that the party was repeatedly informed that the Buttons were new in the valley and knew nothing about irrigation, that they had heard that the lands were of the values stated, and that they had been informed that the reason the people had left the locality was on account of litigation and uncertainty about their water rights. It may be that the defendants' story is the true one. The district court, with the witnesses before it, found otherwise. In any event, it seems clear that, even if the statements made by Button and Hammond were qualified by them as being only what they had been told by others, they effectually conveyed the impression to the purchaser by one means or another that these statements were matters of fact. There is no dispute but that conversation of the general tenor testified to by the plaintiff's witnesses took place. Even if we disregard many of the other matters, the false value placed upon the irrigated lands near Monte Vista, which was evidently done to enhance in the purchasers' mind the value of the land they were to see next day; the plausible reason advanced for the abandonment of the farms near Mosca, which though having a substratum of truth was practically false; the false statements as to the value of adjoining lands; and the fact that the Buttons were not, as represented, selling the lands of others upon commission, but were in reality selling their own land, furnished sufficient basis for the decree, under principles long established in this court.

If representations are made of material facts, and to ascertain their truth or falsity would necessitate an investigation, the party to whom they are made may place reliance on them. *Foley v. Holtry*, 43 Neb. 133; *Olcott v. Bolton*, 50 Neb. 779; *Hamilton Brown Shoe Co. v.*

*Milliken,* 62 Neb. 116; *Perry v. Rogers,* 62 Neb. 898; *Dwinell v. Watkins,* 86 Neb. 740; *Brucker v. Kairn,* 89 Neb. 274. On the whole record, we are satisfied that plaintiff was deceived and misled as to the real nature and value of the property, that if the true facts had been disclosed he would never have purchased this land, and that the representations made were false and fraudulent in a matter exceedingly material to the transaction.

3. The defense of ratification we think is not supported by the evidence. Dr. Latta testifies that at the time he listed the land for sale with the defendants, while he was dissatisfied, he was not informed fully as to all the material facts. In the short interval between this time and the beginning of the suit he learned the truth, and at once began this action. Defendants were placed in no worse position by the delay.

In our opinion, the evidence sustains the findings and decree of the district court, and it is, therefore,

AFFIRMED.