ARNOLD WINEBERG, APPELLEE, V. JAMES O. BAKER, APPELLANT.

FILED JUNE 16, 1932.  No. 28154.

*Neighbors & Coulter,* for appellant.

*Morrow & Morrow, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Day and Paine, JJ., and Lovel S. Hastings, District Judge.

Hastings, District Judge.

The plaintiff, appellee, brought this action to recover from the defendant, appellant, the down payment on land purchased by him at an auction sale on the 23d day of November, 1927. The appellant answered and denied plaintiff's right to rescind and recover, and by cross-petition prayed for the specific performance of the contract entered into at the time of the sale. On the trial defendant's cross-petition was dismissed and judgment entered in favor of the plaintiff for the amount claimed. The defendant prosecutes an appeal therefrom.

The admissions in the pleadings and the evidence establish that prior to the 23d day of November, 1927, the appellant caused to be printed, published and circulated folders stating that on the 23d day of November, 1927, he would sell at public auction the following real estate, described therein as follows: "Lots 4 and 5 and the SW¼ of SE¼ of section 2, township 22, range 56, contains 120 acres and located 3 miles south and 1½ miles east of Mitchell. Unimproved except for a few small buildings for beet workers. 100 acres under cultivation, 20 acres river pasture. Here is a nice little farm located in the famous Mitchell Valley country." Nine other tracts owned by appellant were advertised in said folders for sale and sold at public auction on November 22 and 23. The terms of said sale, as stated in said folders, were 15 per cent. cash on the day of the sale, 25 per cent. on March 1, 1928, and the balance to be paid in five years with in-

terest at 6 per cent. to be secured by a mortgage upon the real estate. The appellee read the advertisement, including the description of the tract of land purchased by him as contained in said folders, on and prior to the date of the sale. Before bids were received for said tract of land, it was announced by the auctioneer that he would receive bids by the acre, and that while the purchaser would be paying for 120 acres there were accretions to the tract so that he would get nearer 140 acres. The appellee bid $130 an acre for 120 acres, amounting to the sum of $15,600, made a payment thereon in the sum of $2,340, as required under the terms of the sale.

Some time after the sale appellee became suspicious that the land did not contain 120 acres, and from an investigation of the records found that the tract of land did not purport to contain that number of acres. As soon thereafter as he could he caused the land to be surveyed, the survey showed 90.423 acres of cultivated land and 23.455 acres of pasture land, or a total of 113.878 acres. Promptly thereafter, and before the 1st day of March, 1928, the time he was to settle for said land, appellee had his attorneys write to the appellant, who was then in Phoenix, Arizona, rescinding the sale and making demand that appellant refund him the down payment. Appellee assigned as grounds for the rescission the shortage in the acreage in the tract and in the acreage of the cultivated land within the tract. Appellant refused to comply with the demand and stated he was demanding the performance of the contract on March 1, 1928. In April, 1931, the appellant had the land surveyed, said survey showing the acreage of the cultivated land to be 91.41 acres and the acreage of the entire tract to be 114.41 acres.

There is a conflict in the evidence as to what occurred at the time of the sale. It is claimed by the appellant that before receiving any bids an explanation was made as to the acreage in the tract and also that of the cultivated land. It appears from the evidence offered on be-

half of the appellant that before receiving bids it was explained by the auctioneer that, while the land had been advertised as containing 120 acres, the title would call for two or three acres less; that some person, unknown, asked as to the acreage of the cultivated land, and appellant was called upon by the auctioneer to give information in that regard and stated that the cultivated land had always been called 100 acres by him and his tenants but that he had never measured it. The appellant then asked the tenant on the land as to the amount of cultivated land and he stated that he had always called it 100 acres but had never measured it. The appellee and two others, who were present at the time where they would have heard such statements had they been made, testified same were not made.

The trial court found that the land was sold as 120 acres at $130 an acre; that the appellant represented that said tract of land contained 100 acres of cultivated land; that both parties believed and understood that said tract of land contained 100 acres of cultivated land at the time said tract was offered for sale, and that appellee submitted his bid of $130 an acre therefor upon that understanding, and that the value of the cultivated land in said tract was $140 an acre.

This being a case which we are required to try *de novo* and reach an independent conclusion without reference to the findings of the trial court, we have made a careful examination of the evidence upon the question as to whether the explanation was made, as claimed by appellant, at the time of the sale, in regard to the number of acres in the tract and the number of acres of cultivated land, and we are unable to reconcile the same. Under this situation, the witnesses having been examined orally, we will give consideration to the fact that the trial court observed the witnesses and their manner of testifying and accepted the version of facts testified to by the witnesses for the appellee rather than those for the appellant. Taking this into consideration, we have no hesitancy in

adopting the version of facts accepted by the trial court as indicated by its findings. The character of the representations therefore depends upon the statements made in the folders or circulars.

Appellant contends that the decree of the trial court is contrary to law and the evidence and that he is entitled to a decree of specific performance. The principal grounds urged in support thereof are: (1) That the statements contained in the folders were an estimate of the acreage in the tract and of the cultivated land therein and not a warranty as to quantity; (2) that the deficiency is so slight as not to be material; (3) that appellee had no right to rely on the statements contained in the folders.

There are other grounds urged in appellant's brief which, owing to the view we take of the case, do not require discussion, although all have been given consideration.

The statements contained in the folders were positive statements of the total number of acres in the tract and of the number of acres of cultivated land therein. They were designed to serve as an inducement to prospective purchasers to purchase the tract.

"Positive statements as to the acreage of a piece of land offered for sale are statements of fact, and, being false and acted on, are actionable, though the vendee might have ascertained their falsity." *Lovejoy v. Isbell,* 47 Atl. 682 (73 Conn. 368). In 39 Cyc. 1267 it is stated: "'Fraud or misrepresentation as to the quantity of land contracted for relates to a material fact and avoids the contract, unless the statement is a mere expression of opinion, or the circumstances are such that the purchaser has no right to rely on the statement. In such cases it is immaterial whether the sale was by the unit of area, such as the acre, or was in gross."

And the same rule applies where the misrepresentation is made as to the extent or proportion of lands of different character and value included within the entire

tract. 27 R. C. L. 373, sec. 74; *Jeffreys v. Weekly*, 81 Or. 140; *Best v. Offield*, 59 Wash. 466.

The representations were false both as to the number of acres in the entire tract and also as to the number of acres of cultivated land. It is immaterial whether the representations were known by appellant to be false, if material, and in ignorance of the falsity thereof were relied upon by the appellee.

As to what deficiency in quantity of land may be regarded as material no fixed rule can be established, but each case must be governed by its particular circumstances. In the case of *Kuhlman v. Shaw*, 91 Neb. 469, an action to recover damages alleged to have been sustained because a tract of land was represented to contain 86 or 87 acres, when in fact it contained 80.29 acres, we held "that the misrepresentations made were material and proper to be considered by the jury in determining whether damages should be allowed, and in what amount."

The tract of land in question was advertised and sold as a farm for farming purposes and purchased as such. The quantity of cultivated land materially affected its value as a farm. There was a material difference in value between the cultivated land and the land in pasture. The land other than the land in cultivation was not suitable for anything other than pasturage. The value of the cultivated land was considered by appellee in making his bid at $140 an acre. The trial court accepted the survey made by the surveyor for appellant which made the cultivated land short 8.59 acres. The entire deficiency in the acreage occurred in the cultivated land which at $140 an acre would amount to $1,202.60. Taking these facts into consideration we think the shortage in acreage of the cultivated land was material.

It appears from the evidence that the appellee had lived within a few miles of the land for many years but had never had anything to do with farming it; that he had been across it a number of times while hunting; that he had the opportunity to inspect the land prior to the sale

but that he relied upon the representation as to the acreage and made no inspection thereof. Counsel for appellant contends on this state of facts that appellee had no right to rely on the representations and invokes the doctrine of *caveat emptor.* The rule of *caveat emptor* applies only to defects that are open and patent to the senses. In 39 Cyc. 1283 (c), cited by appellant, it is stated:

"A positive statement by the vendor as to the quantity of land contained in the realty contracted for generally prevents the application of the doctrine of *caveat emptor* and may be relied on by the purchaser, except, according to some of the decisions, in cases where he has an opportunity to inspect such realty and to draw his own conclusions concerning the quantity."

A small but material deficiency in the quantity of land as compared to the acreage in an entire tract is not such as may be detected from observation without a survey and the vendee has a right to rely upon representations by the vendor as to the quantity of land in the tract. It is only where the deficiency is so great that it may be detected by observation, without a survey, by a person exercising ordinary care that the rule of *caveat emptor* applies. In *Quarg v. Scher,* 136 Cal. 406, that court in passing upon a like contention said:

"It is next insisted that the defendant saw the land and inspected it before making the contract, and having every opportunity to learn of the quantity of the land, he had no right to take the word of plaintiffs on the question of quantity; in other words, that the rule of *caveat emptor* applies to the case. This contention is not well founded; the defendant had a right to rely on plaintiffs' representation as to the quantity of land. The acreage of land is a thing that cannot be seen with the eye at a glance, but can only be ascertained with accuracy by scientific measurement, and when a vendor states to a vendee the amount of land in the tract which is the subject of the sale, such vendor will not thereafter

be heard to say in a court of equity, the vendee had no right to believe him. *Pringle v. Samuel,* 1 Litt. (Ky.) 43."

To the same effect see *Caughron v. Stinespring,* 132 Tenn. 636; *Jeffreys v. Weekly, supra; Roberts v. French,* 153 Mass. 60; 1 Black, Rescission and Cancelation, 356, sec. 115.

While appellee had seen the land and was familiar with it, yet the shortage in acreage in the cultivated land was so small, although material, as compared with the size of the tract that he could be deceived as to the number of acres therein. The cultivated land was an irregular tract and the acreage therein could not be determined from a mere inspection and could only be ascertained with accuracy by a survey. An investigation would be required, as distinguished from a mere inspection, to determine whether there was a deficiency in the acreage of the cultivated land. We have held in numerous cases: "A person is justified in relying on a representation made to him in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth." *Perry v. Rogers,* 62 Neb. 898. See *Brucker v. Kairn,* 89 Neb. 274; *Martin v. Hutton,* 90 Neb. 34; *Latta v. Button Land Co.,* 91 Neb. 689; *Abts Co. v. Cunningham,* 95 Neb. 836. The evidence is that appellee relied upon the representations and would not have purchased the land had he known of the shortage in acreage in the cultivated land. Under the circumstances disclosed by the record, appellee had a right to rely upon the representations as to the quantity of cultivated land within the tract. He was not required to make a survey to ascertain the truth or falsity of the representations.

In this connection it is suggested by counsel for the appellant that the real motive for rescission was the closing of the bank in which appellee had his money, and that the shortage in acreage, used as a ground upon which to rescind, was merely a pretext, and that on account thereof appellee was not entitled to rescind. The

rule is otherwise. "If one has a legally sufficient ground to rescind a contract and acts upon it, the motive which impelled him to take that course is entirely immaterial." 3 Black, Rescission and Cancelation, 1375, sec. 559. Under any view of the evidence we are satisfied that appellee was led to believe and did believe that there were 100 acres of cultivated land in the tract and that he would not have purchased it had he known otherwise.

We have frequently held that specific performance is not generally a legal right, but is directed to the sound legal discretion of the court, and it will not be granted where its enforcement will be unjust. *Hoctor-Johnston Co. v. Billings,* 65 Neb. 214; *Edmiston v. Hupp,* 98 Neb. 84; *Simmons v. Baker,* 109 Neb. 853.

We have also held: "Specific performance will not be enforced unless the contract has been entered into with perfect fairness and without misapprehension, misrepresentation, or oppression, unless it would be unjust and inequitable to refuse to enforce it. *Morgan v. Hardy,* 16 Neb. 427." *Stanton v. Driffkorn,* 83 Neb. 36.

In the case of *Bentley v. Space,* 100 Neb. 486, a case similar to the instant case, we held: "A court of equity may refuse to decree specific performance of a contract for the sale of land at the instance of the vendor, where he has misled the vendee as to the quantity to be conveyed, even though he acted innocently in so doing."

Making application of these rules to the record before us, we are convinced that the trial court was fully warranted in refusing specific performance of the contract and that appellee was entitled to judgment for the payment he had made.

It is urged by appellant that if we find appellee was entitled to rescind we allow an abatement in the purchase price sufficient to compensate appellee for the shortage in acreage and then order specific performance. To do as suggested by appellant would be to make a new contract for the parties in place of the contract the appellee had been misled into making and which he did

not intend to make. This we are not permitted to do. Under circumstances similar to this case we have so held. *Bentley v. Space, supra,* and authorities cited therein. The case of *O'Shea v. Morris,* 112 Neb. 102, relied on by appellant in support of his proposition, is not an authority therefor, nor does it conflict with the view herein expressed.

The decree of the trial court is grounded in equity and good conscience and is

AFFIRMED.