CHARLES E. MUSGROVE, APPELLANT, V. ANTON ESKILSEN ET AL., APPELLEES.

FILED OCTOBER 26, 1934. No. 28795.

*Fischer, Fischer & Fischer,* for appellant.

*Weaver & Giller, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ., and Meyer, District Judge.

Meyer, District Judge.

This is an action to foreclose a purchase-money mortgage executed by the defendants, covering a 54-acre tract in Washington county, Nebraska, and given to secure nine notes of $1,000 each, eight of which remain unpaid.

Defendants in their answer admitted the execution of the mortgage and notes, but say that they signed them because of the false and fraudulent representations of the plaintiff, and they allege in substance, by way of cross-claim, that they were induced to execute said notes and mortgage for the amounts in them set out and to purchase said property for the sum of $16,000, because of said fraudulent representations. They further allege that after the sale was made plaintiff removed from the premises certain personal property in violation of the terms of their contract of sale; that said real estate was not worth at the time to exceed the sum of $8,000, already paid; that they have been damaged in the amount now claimed by plaintiff under said mortgage, and they ask that their claims be set off each against the other. Plaintiff in his reply denies all allegations of new matter and of fraudulent representation. The fraud alleged consisted in the making of false representations that on said property was a water plant capable of furnishing sufficient water to supply defendants' needs; that the buildings did not leak; that the apple orchard and strawberries produced annually $700 net; that the reasonable and fair market value of the land at the time of sale was $16,000; that said land produced $3,200 during the year 1929; and that the fences, pasture, alfalfa and place generally were in first-class condition.

The trial court found in substance that the plaintiff falsely and fraudulently represented that the returns from

the produce from said premises for the year 1929 amounted to $3,200; that the buildings were in good condition; that the water supply and plant for supplying same were sufficient for defendants' needs; and that the value of said premises was $16,000 at the time of sale. The court further found that said representations were made with the intent to, and did, deceive the defendants; that said premises were not worth to exceed $10,000 at the time of sale; that defendants have been damaged in the sum of $6,000; that plaintiff removed from said premises personal property embraced in his contract with the defendants in the amount of $132; that defendants are entitled to recoup the sum of $6,132 as against plaintiff's claim; that defendants are not indebted on said mortgage in a greater sum than $1,868, together with interest at 6 per cent. from April 19, 1930, or a total of $2,166, for which sum decree of foreclosure was entered. Plaintiff has appealed and the case is here for trial *de novo*.

The evidence discloses that in 1930 the defendant Eskilsen was engaged in the dairy business on an 18-acre rented property near Omaha. Early in April of that year he answered an advertisement for the sale of the property in question, and he and his wife were taken to inspect it by one Bowan, a real estate agent with whom the property was listed. They spent about an hour and a half going over the property, and about a week later, at Eskilsen's request, they went again to inspect the place, staying approximately the same length of time. Eskilsen then considered the matter for a few days, after which the plaintiff and Bowan met with the defendants at their home, where the proposed sale was talked over. Plaintiff first asked $16,500 for the property, and defendant said he would not give over $16,000. On April 19, 1930, the transaction was consummated at that figure in the office of Eskilsen's attorney, who prepared the papers. In payment of $7,000 of the purchase price for said property, plaintiff accepted from defendants a deed to a house in Omaha, some building and loan stock, a mortgage, some stocks and

bonds, and $185 in cash. The notes and mortgage were given to cover the balance and the deed was executed and delivered. Under the arrangement made defendants were not to have possession until the following year. In the meantime the premises were occupied by one Karschner, who held under a lease expiring in the spring of 1931.

The chief question involved has to do with the sufficiency of the evidence to support the decree. We note that the trial court did not make specific findings as to some of the allegations of fraud set out, and we assume the court found these were not supported by sufficient evidence. At any rate, we have examined the evidence as to these allegations carefully, and such is our view.

We next consider the charge that the plaintiff falsely represented that he received $3,200 from said place in 1929. That such statement was made is admitted and Musgrove testified that the representation was true; that he had a 2,200-egg incubator and seven brooder houses on which $800 had been recently spent for repairs, and that he took in around $1,200 from chickens and eggs, approximately $300 from apples, and the balance from corn, potatoes, calves, milk, alfalfa, tomatoes and other farm and truck products; that he had a small patch of corn in 1929 yielding 90 bushels an acre; that he sold garden truck, including sweet corn and tomatoes, to the stores and private customers; that his garden was early, and that he received as high as 25 cents a dozen for corn and $1.25 and $1.50 a bushel for potatoes. As against this testimony, Karschner stated that he did not think the place could have produced $3,200 in 1929, and Krambeck, a neighbor, also testified that nobody could make $3,200 off the place. This evidence is largely speculative and Karschner's opinion was gained during a year when farm products had sharply declined. While $3,200 appears to be a rather large income from such a small acreage, and plaintiff's representations as to what a place had yielded, as distinguished from the mere statement of opinion as to what a place will produce, is ordinarily actionable if false,

yet it is a matter of common knowledge that produce prices were high in 1929. The fact shown that Eskilsen did not take in so much in later years does not, of itself, disprove those representations. Productivity and income from a farm depend upon many factors, among which are ability and industriousness of the farmer; use to which the land is put; rainfall and weather conditions, as well as soil and market conditions. The farm was put to different use when Eskilsen took possession. We do not think the defendants have sustained the burden of establishing the falsity of these representations. Neither does it appear that they relied thereon or that the defendants were misled by such statements. Plaintiff testified that when he was explaining to Eskilsen what he had taken in from chickens, etc., Eskilsen said, "Devil with that kind of stuff, I have milk cows." This statement was not denied, and the defendants admit that they were primarily interested in securing this acreage for the purpose of conducting a dairy business.

As to the charge that plaintiff falsely represented that the buildings on said premises had water-proof roofs thereon, defendants testified that Bowan had told them that the buildings did not leak and that plaintiff told them that whatever Bowan said was a fact. They also testified that when they moved on the place the roofs leaked badly in the little house, the big house and the barn, and Eskilsen estimated it would cost $430 to repair them. Nearly a year expired between the time Eskilsen bought the place and the time he took possession. Neither Karschner, who occupied the little house, or any one else, testified that the small house or the barn leaked at the time of sale. If these buildings did leak at that time, certainly Karschner would have known it and defendants, who called him on other matters, would have had his testimony on this point. Defendants inspected the property before they bought it. Eskilsen admitted that at that time he saw some spots on the paper in the house. Mrs. Eskilsen said when they moved in the big house it was

badly water-spotted in the dining-room and kitchen where it had leaked through the roof and that the paper was loose in the front room as well; that the paper in the living-room and dining-room was also loose the first time they were there, and that the place was practically in the same condition, only possibly a little more paper loose, when they moved in. The big house had a shingle roof on it with roofing material placed over it, and when defendants moved in part of this roofing had blown off. How much this contributed to the leaky condition is not shown. Both defendants having inspected the property before the purchase was made and having then seen evidence of a leaky roof, we do not think they had a right to rely on these representations, even if false.

·It is also charged that plaintiff falsely represented that said place was in first-class condition and was worth $16,000 at the time of the sale. The improvements consisted of a ten-room house, a four-room house, a barn, a lean-to, a three-car garage, a double corn crib, a granary, two chicken houses, a good-sized hog house, a building constituting a combination pump house and granary, another small building, seven brooder houses and two caves. The value of these improvements was fixed by the various witnesses at the time of sale at from $5,000 to $10,000. The property joins Calhoun on the south and is on a public highway which is now paved. Several former neighbors fix the value of the property at the time of sale at not to exceed $8,000. On the other hand, it is in evidence without objection that plaintiff gave $16,200 for the place two years previous and that prior thereto it sold on exchange, subject to a $15,000 mortgage; that Musgrove carried $11,500 insurance on the buildings, and that defendants sold about six-tenths of an acre to the county and state for road purposes for $250.

The record discloses that Eskilsen was a man of mature years; that, in addition to conducting a dairy on his own account, he had worked at carpentering, trucking, as a railroad and dairy employee, and that he had farmed two

years in Colorado. It is already shown that he sought the opportunity to examine the place in question as he desired a larger place for his dairy business and that he made two trips there for that purpose. Both he and his wife visited the premises and inspected the buildings and he went into the fields and into the orchard. He might have visited every foot of it had he been willing to take the time, and the only reason which he assigns for not giving more time to the inspection of the property is that he was too busy with his dairy work. We think the excuse, under the circumstances, is without merit. He was an experienced dairyman, had done some farming and wanted to buy a place for the •purpose of carrying on his dairy business. It appears that other tracts of land were shown him by the plaintiff's agent and the tract purchased was the one in which he was particularly interested. He was, under no sort of restraint or disability and lived in close proximity to the property purchased. He took time to consider the purchase after he had made the inspections and before he signed the papers. He could, had he chosen to do so, have examined it further and have secured full information in regard to its value.

As a general rule a mere misrepresentation of value when made by the owner of land in an effort to sell it is not actionable. *Dresher v. Becker,* 88 Neb. 619; *McKnight v. Thompson,* 39 Neb. 752. See, also, *McKibbin v. Day,* 71 Neb. 280. Such representation being generally regarded as a mere expression of opinion involving a matter of judgment and estimation, as to which men may differ. 26 C. J. 1215.

This court has also held that, in defending a suit on a note given in part payment for the purchase of land on the ground that said note was procured by fraudulent representations concerning said land, it was not only necessary to prove that the representations were made, that they were false, and that the maker of the note believed them and relied upon them, but it is equally essential to show, in some manner, the existence of circum-

stances entitling him to rely on them. *Runge v. Brown,* 23 Neb. 817; *Realty Investment Co. v. Shafer,* 91 Neb. 798. We think the rule announced is applicable to the case at bar and, in our opinion, defendants in this case did not, under the circumstances, have a right to rely upon the representations made as to the value of said property or as to its general condition.

Concerning the water plant, it appears that plaintiff and his agent represented in substance and led defendants to believe that the water supply was ample for such stock as defendants contemplated running on the place; that they would have water in the house for toilet, bath and domestic purposes, and that the plant was in good condition and would automatically furnish such water as was needed. The plant consisted of an automatic electric pump with pressure tank, the power being supplied by a small motor. There was also another big pump run by a gasoline engine which could be used in case of an emergency. It appears that Karschner, who took possession of the premises after plaintiff left, lived in the small house, and that he had sufficient water for his use and for four head of stock, some chickens and pigs, but he said he did not use much water and he only used the electric pump a part of the time. The plant was designed to automatically maintain a desired pressure, but Karschner testified that sufficient pressure could not be maintained; that the plant was in poor condition; that it would not work satisfactorily; that it required constant attention; that when the defendants moved in he tried to help them operate it, but that they did not have any success; and the defendants testified that they were unable to get sufficient water for their stock and that they never were able to get any water into the house. In the record is also the evidence of a well-digger that he had examined the plant and well and that they were out of order and would not produce sufficient water to supply defendants' stock, and that an expenditure of $1,000 would be required before the plant could be put in good condition. While this amount seems rather large, it is not denied.

Whether representations as to the condition of a water plant are actionable, if false, or amount merely to an expression of opinion depends upon the facts of each particular case. In the instant case the statements made were in the nature of positive representations of an existing fact, the truth of which defendants were unable to ascertain even by an examination of the plant, first, because the evidence shows that when defendants inspected the premises the water had been disconnected from the large house, and, second, because it also appears that they had no knowledge of the plant mechanism. Defendants purchased the place for a dairy, which fact was known to plaintiff. A good water plant was essential to their needs and also that they might enjoy the conveniences which it was represented they would have in their home. We think, under the circumstances, that defendants were entitled to rely upon such representations. The evidence as to the damages they have sustained by means of said misrepresentation is rather meagre; however, considering all the evidence we feel warranted in fixing it at the sum of $1,000.

Plaintiff contends that, defendants' cross-demand being one for unliquidated damages, same cannot be set off in an action for the foreclosure of a mortgage. The cases which he cites are not in point.

We think the rule is that, in an action to foreclose a purchase-money mortgage, mortgagor may properly recoup damages for false representations made by plaintiff concerning said real estate in diminution of plaintiff's claim, where such representations were the means employed to bring about the contract of sale and the execution of the notes and mortgage. See *Rollins v. Hopkins*, 103 Neb. 830; *Larabee v. Given*, 65 Neb. 701; *Dwinell v. Watkins*, 86 Neb. 740; *Realty Investment Co. v. Shafer, supra; Stephens v. Doxey*, 58 Utah, 196; *Northern Trust Co. v. Sanford*, 308 Ill. 381; Pomeroy's Code Remedies (5th ed.) 1083, and cases cited; 42 C. J. 32, 96, and cases cited; 57 C. J. 407, and cases cited.

The trial court also found that the defendants were entitled to recoup the amount of $132 because of certain fencing, building material and other personal property which it was found were embraced in defendants' contract with plaintiff, and which said personal property plaintiff retained and failed to deliver. At the time of sale the articles in question were on the premises purchased, which premises were then occupied by a tenant of the plaintiff. Defendants did not have the right of possession thereof until the following spring. The articles for which recoupment was allowed were removed by the plaintiff and never did pass into defendants' possession. The evidence is conflicting as to whether or not this property was included in the sale. Defendants testify that it was, and if their evidence is believed, it is sufficient to support the findings made in that regard. The trial court had the advantage of seeing the witnesses and of observing them while testifying. We ought not, therefore, disturb its findings in this respect.

That portion of defendants' cross-bill in which recoupment is asked for personal property appears to be drawn on the theory of a conversion occurring after the sale; however, it was not attacked by motion, special demurrer or otherwise, and defendants' evidence as to said claim was received without objection. Since the notes secured by the mortgage in foreclosure were given in part as a payment for the personal property which plaintiff contracted to but failed to deliver, there arises, therefore, a cause of action for damages in favor of the defendants and against the plaintiff, which we think, under the record and the authorities already cited, is a proper subject of recoupment.

The amount allowed by the trial court in diminution of plaintiff's claim is reduced to $1,132, leaving a balance due of $6,868 together with interest at 6 per cent. from April 19, 1930, or a total of $8,687. As thus modified, the judgment of the trial court is affirmed.

AFFIRMED AS MODIFIED.