H. DWAIN RIDDLE, APPELLANT, V. ARTHUR ERICKSON, SPECIAL ADMINISTRATOR OF THE ESTATE OF PAUL H. EATON, DECEASED, ET AL., APPELLEES.

158 N. W. 2d 608

Filed April 26, 1968. No. 36816.

Wright, Simmons & Hancock, for appellant.

Robert J. Bulger, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

Plaintiff H. Dwain Riddle brought this action for damages against the defendant, Arthur Erickson, personally and as executor of the estate of Paul H. Eaton, deceased, for misrepresenting the sale of an insurance agency belonging to the deceased at the time of his death. The trial court found for the defendant and plaintiff has appealed.

On July 29, 1963, Erickson advised Riddle by letter that he was authorized to sell the insurance business of Paul H. Eaton to the highest bidder for cash within the following 10 days. Riddle was urged, if interested, to submit his bid as soon as possible. The business being sold was described and represented in the letter to be as follows:

"The business covered auto insurance, fire and related coverages on buildings, liability insurance and surety policies with a total annual premium volume of $9,562.58 and an annual commission to the agency of $2,420.28 as shown by a survey made since Mr. Eaton passed away. This survey was made from Mr. Eaton's records and from the best information available, and although we believe it to be accurate, I can not personally guarantee the exact accuracy of the figures.

"The companies represented in the agency are Union Insurance Company, National Fire Insurance Company, Employers Mutual Insurance Company, Home Insurance Company, Western Surety Company and Northern British and Mercantile Insurance Company, with a few scattered policies in other companies."

On August 7, 1963, Riddle wrote to Erickson in which he made a cash bid of $2,720 for the insurance agency on the terms on which it was offered for sale. The bid was accepted and a bill of sale delivered effective as of July 16, 1963, the date of Paul Eaton's death.

The evidence shows that Riddle, at and prior to July 29, 1963, conducted a life insurance agency. He had had no previous experience in the fire, liability, and surety business. He understood that the purchase of the agency did not carry with it the franchises in the insurance companies represented in the agency; and that such franchises were matters between the companies and the agent or agency. Riddle requested Erickson to see the books of the agency and was refused because of the possibility of revealing expiration dates of policies in force to the damage of the agency. Erickson was the president of the Bridgeport State Bank and was experienced in the type of insurance involved here. The survey of the agency referred to in the offering letter was made by Thomas H. Olson, also a banker experienced in general insurance. The Olson survey of the agency was made with the approval of Erickson and was relied on by him.

It is the contention of the plaintiff that the trial court was in error in holding that there was no misrepresentation in the offering letter received from the defendant on which he allegedly relied to his damage. It is the general rule that one who solicits a sale has a duty to disclose all pertinent facts within his knowledge affecting his representations when he knows or ought to know that they are not within the reach of a reasonably diligent and observing buyer and would readily mislead the purchaser as to the true condition of the property. Dar-

gue v. Chaput, 166 Neb. 69, 88 N. W. 2d 148. A prospective purchaser is justified in relying on a representation made to him where it is a representation of existing fact and an investigation would be required to discover the truth. Falkner v. Sacks Bros., 149 Neb. 121, 30 N. W. 2d 572. The intent or good faith of a person making false statements in such a case is not material. Dargue v. Chaput, *supra*. A seller does not ordinarily avoid liability for a positive misrepresentation of fact by disclaiming accuracy in his offering communication. Wineberg v. Baker, 123 Neb. 411, 243 N. W. 122.

Plaintiff asserts that the offering letter was false in stating that the Home Insurance Company and North British and Mercantile Insurance Company were represented in the agency. The evidence shows that on January 17, 1961, the Home Insurance Company discontinued its representation with the Eaton agency insofar as the writing of new policies and the renewal of existing policies were concerned. The Eaton agency retained a limited representation with the Home Insurance Company for the purpose of collecting premiums on policies in force with that company until they terminated and with the opportunity of writing the insurance in other companies upon their termination. The rule applicable to North British and Merchantile Insurance Company will be controlled by our disposition of the alleged misrepresentation as to the Home Insurance Company.

The plaintiff testified that he was in the business of writing life, health, and accident insurance for some years prior to July 29, 1963. He said that in the furtherance of that business, he often had inquires concerning fire, compensation, and other forms of insurance. He concluded that he desired to acquire an agency that would permit him to serve his customers with all kinds of insurance. In order to do this he desired to obtain an agency with companies that were recognized as good companies and that the Home Insurance Company and North British and Mercantile Insurance Company were

such companies. He said that he relied on obtaining the agencies for these companies and that without them he would be unable to write liability and compensation insurance, and that he would not have placed a bid for the agency if he had known that their representation in the agency had been canceled. There is evidence in the record that when Home Insurance Company decided to close out with the agency there were other companies represented by the agency which could have written renewals of their policies and that such companies were still represented by the agency in 1963. The plaintiff knew, as he admits, that the representation of an insurance company is a matter of negotiation and agreement between the company and the prospective agent, and that the sale of an agency is not a sale of insurance company franchises represented by the agency. The commissions on premiums on policies in force retained by the agency would belong to the plaintiff. The expirations of such policies were a valuable asset to the agency for the purposes of renewal in other companies represented by the agency. Even if plaintiff construed the offering letter as a representation that the agency for existing insurance companies in the insurance agency would come to him, it was a representation on which plaintiff had no right to rely in view of his own knowledge that it was a matter between the company and the agent. The representation in the offering letter that Home Insurance Company was represented in the agency was true even though such representation was more limited than plaintiff anticipated. But it being a representation on which he knew he had no right to rely, he is in no position to assert there was a misrepresentation of fact when he knew, as he admits, that defendant could not assign the insurance company's franchise. He was not misled by placing a technical construction on the offering letter which he fully understood was not the fact.

Plaintiff asserts that the offering letter was false in stating the agency had "a total annual premium volume

of $9,562.58 and an annual commission to the agency of $2,420.28." Plaintiff alleges that the 1 year premiums on policies in force in the agency on July 16, 1963, amounted to $6,809.74 on which the 1 year commissions were $1,900.37. There is little conflict in the evidence dealing with the annual premium volume and annual commissions previously earned by the agency. The figures contained in the offering letter were the premium volume and commissions earned by including the proportionate share of 3 and 5 year policies whether prepaid or not while those asserted by the plaintiff are those shown by the cash return of the agency as shown by the records of the agency as of July 16, 1963, the date of the death of Paul Eaton. It is the contention of the defendant that the annual premium volume and commission as calculated by the defendant more nearly fix the value of the agency for purposes of sale, while the plaintiff argues that the cash items shown on the records of the agency at the time of sale more clearly fix the value and that this is clearly misrepresented in the offering letter.

The proper disposition of the case necessarily depends upon the meaning of "total annual premium volume" contained in the offering letter. We think the term means not only the cash income from policies written for a term of 1 year, but in addition thereto, the proportionate share of premiums on policies written for 3 and 5 year terms whether or not such premiums were paid when the policy was issued or paid on an annual basis during the term of the policy. It cannot be said, as we view it, that a 3 or 5 year policy paid for when issued does not contribute to the total annual premium volume in determining such volume for the purpose of selling an insurance agency. The opportunity to renew such a policy on its expiration is a valuable asset of an insurance agency. True, the immediate financial return to a purchaser is greater when a 3 or 5 year policy is paid on an annual basis, but, assuming a renewal on the same terms, the returns even out in the long run. If

this were not the proper view, a purchaser would obtain the opportunity to renew a 3 or 5 year cash policy without compensation to the seller. We cannot overlook the fact that the opportunity to renew a policy issued by an agency upon its expiration is a prime asset, if not the chief one, in the sale of an insurance agency such as we have here. We necessarily conclude that there is no actionable misrepresentation in the offering letter. See Musgrove v. Eskilsen, 127 Neb. 730, 256 N. W. 883. The method used in determining the total annual premium volume as a means of fixing the value of the agency is an acceptable one and, under the evidence, supports a finding that the offering letter is free from misrepresentation.

The evidence in this case generally is not in dispute. There are some minor conflicts therein which were resolved by the trial court adversely to the plaintiff. The judgment of the trial court has the effect of a jury verdict, a jury having been waived. Under such circumstances, such conflicts in the evidence must be resolved in favor of the successful party. McGerr v. Beals, 180 Neb. 767, 145 N. W. 2d 579. The evidence is sufficient to sustain the judgment. The judgment, including the judgment on defendant's cross-petition, is correct.

The judgment should be and is affirmed.

AFFIRMED.